HERBERT JONES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 110984. Promulgated May 28, 1943.

*J. F. Dammann, Esq.,* for the petitioner.
*Harold H. Hart, Esq.,* for the respondent.

LEECH, *Judge:* Respondent determined a deficiency in gift tax of $39,329.30 for the calendar year 1938. The issue is whether a payment of $222,643, made in property and money by petitioner in that year to his former wife in performance of his obligation to her under a contract settling property rights, entered into as an incident of their divorce proceedings, constituted a taxable gift.

We find the facts as stipulated by the parties.

The petitioner is a resident of Cook County, Illinois, and filed a gift tax return for the period here involved with the collector for the first district of Illinois.

In the year 1938 the petitioner was a resident of the State of Nevada. His wife, Louisa Dorothea Kann Jones, had separated from him and was a resident of England. On February 2, 1938, petitioner filed in the First District Court of Ormsby County, Nevada, a suit for divorce from his wife, alleging mental cruelty. On the same date his wife, through her attorneys, entered her appearance in such suit and filed her answer to the complaint.

Prior to the filing of this suit for divorce, the parties thereto, through their respective attorneys, had negotiated a property settlement, to be effective upon the granting of the divorce. In that suit, the complaint filed by petitioner stated "that there are no children the issue of the marriage, and all property rights of plaintiff and defendant have been settled and adjusted, and no order of the Court is requested in reference thereto." The answer filed by petitioner's wife admitted this allegation. On the same date after a hearing the court entered its findings of fact and decree sustaining the allegations of the complaint and awarding an absolute divorce and restoring each party to the status of a single, unmarried person.

Thereafter, on May 23, 1938, petitioner and his former wife, to carry out their aforesaid prior agreement, executed an agreement bearing witness to the fact that petitioner had on that date paid over to her the sum of $190,000 and conveyed to her two residence properties in England in effecting a full, complete, and final settlement of all claims of each in the property of the other. The two pieces of property in question had a combined value of $32,643.

During the years from 1928 to 1937, inclusive, the net income returned by petitioner for Federal income tax was as follows:

| | | | |
|---|---|---|---|
| 1928 | $142,240.98 | 1933 | $76,134.01 |
| 1929 | 192,691.84 | 1934 | 77,498.42 |
| 1930 | 163,072.25 | 1935 | 105,253.74 |
| 1931 | 78,526.32 | 1936 | 131,783.43 |
| 1932 | 60,351.08 | 1937 | 163,993.98 |

Respondent contends that the transfer of money and property by petitioner to his former wife under the foregoing circumstances was a taxable gift. He has consistently maintained the position heretofore that payments under antenuptial agreements constituting the consideration for surrender by the intended wife of the inchoate right of dower to which she would be otherwise entitled after marriage are subject to the gift tax. See *Bennet B. Bristol*, 42 B. T. A. 263; reversed, *Commissioner* v. *Bristol*, 121 Fed. (2d) 129. But, so far as we are advised, this is the first instance where respondent has taken the position that payments made by a husband to his wife, incidental to divorce proceedings and in settlement of her rights to maintenance and support, are taxable as gifts.

Section 804 of "Title VI—Estate Tax Amendments" in the Revenue Act of 1932 amended section 303 (d) of the estate tax provisions of the Revenue Act of 1926, by providing that, "For the purposes of this title * * *," release of dower, curtesy, or similar rights "shall not be considered to any extent a consideration 'in money or money's worth.'" The gift tax law was enacted as Title III of the same Revenue Act of 1932 and contained no comparable provision. Despite this pointed omission, respondent's theory in the *Bristol* case was that in construing section 503 of the gift tax law [1] we should read into it the quoted amendment to the estate tax provisions.

The effect of that theory, of course, would require a holding in every case that a payment for surrender of dower or other marital rights would be subject to gift tax. We rejected that theory in the *Bristol* case. In that proceeding, involving a payment under an antenuptial contract, it was held that the surrender of such rights under a contract of that character could be full and adequate consideration under the gift tax law, and that the sufficiency of that consideration was a question of fact for determination in each case upon the evidence as to the value of the estate, the rights in which were released. Our view was that not only the failure of Congress to make section 804, *supra*, applicable to the gift tax provisions, but its specific limitation of that section to the purposes of the estate tax provisions, precluded its being treated as an amendment to the gift tax law. On review, our decision there was reversed. *Commissioner* v. *Bristol, supra.* We have not, however, departed from the view expressed in our opinion in that case. Moreover, the comparatively recent decision by the Second Circuit in *Commissioner* v. *Beck's Estate*, 129 Fed. (2d) 243, is especially significant. In that case it was urged that the estate and

---

[1] SEC. 503. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

gift tax provisions of the statute, being complementary, should be integrated for purposes of construction. Similarly rejecting this theory the court held that these provisions, though complementary, were separate and distinct in themselves and that the silence of Congress in its failure to require the integration of their provisions was "strident."

The respondent relies here strongly upon the opinion of the Circuit Court in the *Bristol* case. He also cites other decisions involving antenuptial settlements and cases decided under the estate tax provisions of the statute. Passing the question of the correctness of our decision in the *Bristol* case, we do not think that the cited decisions control the present question. The *Bristol* case involved an antenuptial contract under which payment was made for a release of dower rights. The contested payment here occurred in satisfaction of the wife's right to support by her husband and as an incident of their divorce. There may be some ground for argument that prior to or during marriage, when no divorce is contemplated, the inchoate right of dower which may never be realized is too uncertain and indefinite to be then measured in terms of money. Moreover in those cases the circumstances are frequently such that there may well be a definite donative intent in the transfer. The contract there may be to effect a mere family arrangement. The parties are manifestly not dealing at arm's length and the purpose to exact a *quid pro quo* may be lacking. It is a far cry, however, from such a transaction to that presented in this record, where the transfer was in settlement of a present and existing liability. Here the estranged husband and wife were taking steps to secure a divorce and a settlement was made of the wife's right to support. There was no inchoate or indefinite right, the value of which was to be ascertained. The wife possessed not only a right to support by her husband, but she was entitled to have the court determine the value of that right and set aside its amount from her husband's estate, unless the parties themselves did so by agreement. By the Nevada Compiled Laws of 1929, section 3361, curtesy and dower are abolished in that state and, by section 9463, the court, in its discretion, is given authority in case of divorce to make proper provision for the support and maintenance of the wife from the husband's estate. Had the payment here been made under a specific award in the divorce decree of the court, there could scarcely have been a claim that it was a gift. See *Walter S. Halliwell*, 44 B. T. A. 740; reversed, 131 Fed. (2d) 642; certiorari denied, —— U. S. —— (May 4, 1943). But respondent does not go so far. He contends that in view of the fact that the parties negotiated a settlement and consequently asked no specific award by the court, the transaction takes on an entirely different character and is a voluntary transfer by the husband in settlement for release of rights to which no value in money's worth could be ascribed.

We do not agree. In either case, whether under award by the court or by agreement between the parties, an existing legal liability on the part of the husband to the wife was settled. The mere form of the transaction under which that liability is satisfied is not controlling. The husband and wife here, acting through their respective attorneys, negotiated a settlement of the wife's right to maintenance and support. The settlement was unquestionably an arm's length transaction for consideration, with no suggestion of donative intent or purpose. *Hensley* v. *Hensley*, 179 Cal. 284; 183 Pac. 445. In the divorce complaint and answer they advised the court that such settlement had been made and consequently no award by the court would be requested. The court in its decree found this to be a fact. It took no action looking toward settlement of property rights nor did it reserve any power in the decree to thereafter modify the settlement. By so doing the court accepted the settlement as agreed upon by the parties. Under such conditions the contract of the parties and the decree effected a final and complete settlement of such property rights and was not subject thereafter to change by the court. *Helvering* v. *Fitch*, 309 U. S. 149; *Helvering* v. *Leonard*, 310 U. S. 80; *Helvering* v. *Fuller*, 310 U. S. 69; *Arthur Letts, Jr.*, 41 B. T. A. 1172.

We do not agree with the broad position taken by respondent that a transfer under such circumstances and without donative intent may be subject to gift tax. As the Second Circuit said in *Commissioner* v. *Hyde*, 82 Fed. (2d) 174, in answer to an argument that a trust established for the benefit of a wife under somewhat similar circumstances was a gift, "to hold that the trust was established as a voluntary gift * * * would be to close one's eyes to the realities."

Respondent contends, nevertheless, that no value is established for the wife's right to maintenance and support, in satisfaction of which the transfer in question was made. From this premise he argues that the entire value of the transferred property and money was taxable as a gift within the literal wording of section 503, *supra*.

Again we do not agree. The very fact that the attorneys representing petitioner's wife in dealing at arm's length with his attorneys were able to exact a payment of $222,643 in settlement of his obligation is persuasive evidence to us of the value of her right. The amount which the court, in the absence of the agreement, would have been called upon to award to petitioner's wife from his estate would have been based upon his income and the station in life in which he would reasonably be required to maintain his wife. The net income of petitioner for the 10 consecutive years ending with that in which the settlement occurred, averaged $110,000 for each year. At the time the settlement was effected, his income was increasing and the amount paid was little more than his net income for the current year. Thus, not only was the contested payment made as a result of a settlement

negotiated at arm's length in which an adequate consideration will be presumed (*Commissioner* v. *Mesta*, 123 Fed. (2d) 986), but the record affirmatively indicates that the settlement was financially favorable to petitioner. See *Young* v. *Young*, 323 Ill. 608; 155 N. E. 405; *Rice* v. *Rice*, 256 Mich. 287; 239 N. W. 256; *Miller* v. *Miller*, 90 Ind. App. 359; 168 N. E. 881; *Owens* v. *Owens*, 20 Ohio App. 518; 152 N. E. 767; *Harden* v. *Harden*, 77 Pac. (2d) 721 (Oklahoma).

But aside from that frailty, we think the present transfer was not within the purview of section 503, *supra*. That section can scarcely mean that all arm's length business transactions, involving transfers of property, shall be subjected to scrutiny and, in every case where one party makes a bad bargain, he should have his misfortune increased by the imposition of a gift tax on his unfavorable balance from the transaction. The tax is imposed by authority of section 501. It is expressly limited to transfers "by gift." "Gift" is not defined in the statute. The respondent, however, has himself defined the term as used in the controlling statute as excluding arm's length business transactions, such as is evidenced here, in which there was no donative intent. Regulations 79, arts. 1, 2, and 8, approved October 30, 1933, and arts. 1, 2, and 8 of the same regulations, approved February 26, 1936. See *L. W. Mesta*, 42 B. T. A. 933; reversed, 123 Fed. (2d) 986; certiorari denied, 316 U. S. 695; *Walter S. Halliwell, supra.*[2] We think that is correct.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

[2] The Circuit Court in the *Mesta* case affirmed the position of the respondent that the transaction was taxable in character, but reversed the Board's holding that no taxable gain was realized. The court in the *Halliwell* case agreed with the court's opinion in the *Mesta* case.