Philip M. McKenna v. Commissioner.
McKenna v. Commissioner
Docket No. 4839.
United States Tax Court
1945 Tax Ct. Memo LEXIS 82; 4 T.C.M. (CCH) 891; T.C.M. (RIA) 42257; September 18, 1945
Paul G. Rodewald, Esq., 1025 Union Trust Bldg., Pittsburg, Pa. and M. J. Sporrer, Esq., for the petitioner. Richard L. Shook, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $77,715 in the petitioner's gift tax for the calendar year 1940, holding that in addition to cash gifts of $40,000 reported in the return, the petitioner also made the following gifts on June 30, 1940: To Alexander G. McKenna, $70,400; to Dorothy C. McKenna, $123,200; to Donald C. McKenna, $70,400; and to Alexander G. McKenna, in trust for each of the petitioner's three children, *83 $88,000. The petitioner contends that the Commissioner erred in increasing his total gifts for 1940 over the amount shown on his return. Findings of Fact The petitioner is an individual who resides at Latrobe, Pennsylvania. He filed his gift tax return for the calendar year 1940 with the collector of internal revenue for the 23d district of Pennsylvania. The petitioner is a metallurgical chemist. He was employed for a number of years as chief research metallurgist for the Vanadium Alloys Steel Company at Latrobe, Pennsylvania. He had an arrangement with that company whereby any patents obtained by him would belong to the company, but he would have certain royalty rights in the patents. Differences arose between the petitioner and his employer, as a result of which the petitioner was discharged. He obtained 10 new patents shortly thereafter which he refused to assign to Vanadium. He purchased from Vanadium the laboratory equipment which he had been using, employed several of the men who had been assisting him at Vanadium, and went into business for himself on March 1, 1938, at Latrobe, Pennsylvania. He was manufacturing, on a small scale, a product which he had invented, called *84 "Kennametal", a very hard substance used as the cutting element in machine tools. Litigation ensued between him and Vanadium. This was settled in October 1939 by assignment of the 10 Kennametal patents to Vanadium, which granted to the petitioner a royalty-free license to manufacture under the patents and right to assign that license. The petitioner was also to receive a 2 per cent royalty from other licenses of Vanadium. The petitioner conducted his business as a sole proprietorship until the end of June 1940. It was successful and was increasing. He desired to form a partnership for the conduct of his business, the partnership to include one or two of his key employees, his son, who was a minor, and several relatives. He had numerous discussions of this subject with his wife, his brother, Donald, and his cousin, Alexander G. McKenna. These people believed that the petitioner needed the steadying influence, the business advice and the financial support of some others in order to expand and carry on his business to the best advantage and to preserve it in case of his illness or death. Donald is an executive of a manufacturing company in California. Alexander worked in the petitioner's *85 business. The group decided against the petitioner's suggestion of taking in the employees. His wife insisted that their two minor daughters be taken in on the same basis as their minor son. The son was 15 years of age and the daughters were 13 and 17 in June 1940. The petitioner was advised that minors could not become partners under the laws of Pennsylvania. The parties to these conferences were well acquainted with the petitioner, the extent and limits of his extraordinary ability, the condition of his business, the situation in regard to the patents, business conditions in the United States affecting the machine tool business, world conditions, and other factors which might have a bearing upon the future of the petitioner's business and, after bona fide bargaining at arm's length in a businesslike manner, they finally came to an agreement which they carried out. The petitioner, on June 28, 1940, transferred to Alexander G. McKenna, as trustee, $12,000 for each of the petitioner's three children, in separate trusts. He appointed his brother, Donald, as advisor for these trusts and all investments, sales and reinvestments were to be authorized and directed by him in his sole discretion. *86 It was understood among the parties, however, that each of the three trusts would invest the $12,000 corpus by acquiring a 10 per cent interest in the partnership to be formed. The petitioner, on July 1, 1940, gave his wife $4,000 in cash, which it was understood she would use, along with other funds, to acquire a 14 per cent interest in the partnership. The petitioner, his wife, Dorothy, his brother, Donald, and his cousin, Alexander, individually and as trustees for each of the three children, entered into a partnership agreement on July 1, 1940 for the conduct of the business under the name of McKenna Metals Company. Donald contributed $9,600 for an 8 per cent interest as a limited partner. Alexander contributed $9,600 for an 8 per cent interest as a general partner. Dorothy contributed $16,800 for a 14 per cent interest as a general partner and each of the three trusts contributed $12,000 for a 10 per cent interest as a general partner. The petitioner contributed his business, exclusive of the pattents, for the $72,000 in cash contributed by the other six partners and a 40 per cent interest as a general partner. The petitioner furnished none of the funds which were contributed, *87 except as has been indicated above. The petitioner, on July 19, 1940, in accordance with the integrated plan of the partners, transferred to the partnership the royalty-free license, granted to him by Vanadium, in consideration of the agreement of the partnership to pay him $75,000 in semi-annual installments of $2,500 over a 15 year period. This part of the agreement was protected by a policy of insurance in the amount of $75,000 on the life of the petitioner payable to the partnership. Alexander, thereafter, took an active part in the partnership business, exercising full authority as a partner and contributed valuable services. Dorothy and Donald were consulted frequently but gave only a small part of their time to the business. The petitioner, in connection with the above described transactions had no intention of making any gift to his brother, Donald, or to his cousin, Alexander, and he did not make any gift to either of those individuals. He did not intend to make any gift to his wife, except the $4,000 in cash, and he did not make any gift to her except the $4,000 in cash. He did not intend to make any gift to his children or to Alexander in trust for his children, except *88 the $12,000 in cash which he gave in trust for each child, and he did not make any gift to his children or to Alexander in trust for his children in excess of the $12,000 in cash which he gave to Alexander in trust for each of his children. The prices which the parties agreed upon were fair prices and resulted from fair and open bargaining. The petitioner, on his gift tax return for 1940, reported a gift of $4,000 to his wife, Dorothy, and gifts of $12,000 each, to Alexander in trust for the petitioner's three children. He claimed an exclusion of $4,000, a specific exemption of $36,000, and showed no net gifts or tax due. The Commissioner, in determing the deficiency, held that the petitioner, in addition to the cash gifts of $40,000, had made, on June 30, 1940, a gift of $70,400 to Alexander, a gift of $123,200 to Dorothy, a gift of $88,000 to Alexander, in trust for each of the children, and a gift of $70,400 to Donald. He allowed exclusions of $12,000 and a specific exemption of $36,000 to arrive at net gifts of $520,000. Opinion MURDOCK, Judge: The determination of the deficiency resulted from an investigation by an internal revenue agent who reported that the value of the *89 properties turned over by the petitioner to the partnership, in July 1940, was $1,000,000. No attempt was made to substantiate that value and the record completely discredits it. The respondent called as his only witness on value, a certified public accountant who said that the value of the properties in July 1940 was probably between $325,000 and $395,000. The petitioner introduced a great deal of evidence, including the testimony and opinion of a concededly qualified expert, to show that the values of the interests acquired by the various partners from the petitioner were approximately the amounts which they paid for them. The respondent relies upon section 1002, I.R.C., which is as follows: SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION. Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year. The petitioner concedes that he made four *90 gifts, totaling $40,000, and he reported those gifts. He does not object to having all of his transactions looked at as a whole, in which case it would appear that he transferred property for less than full consideration in money or money's worth. But, in that event, he says that the amount by which the value of the property exceeded the value of the consideration received was $40,000, the exact amount which he reported as a gift. The book value of the assets which he transferred was $120,000. The patents were transferred in consideration of the payment of $75,000 over a period of years. Section 86.8 of Regulations 108, upon which the respondent also relies, provides, in part, that a sale "made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth." The four parties to the negotiations which led to the formation of a partnership to carry on the business which had theretofore belonged to the petitioner, as a sole proprietor, were related by blood or marriage. Transactions between such parties may be carefully scrutinized for *91 tax purposes. This one has been examined to see whether the petitioner gave his property away for substantially less than it was worth. A partnership is one of the most personal of business entities and these four persons exercised care in the selection of their partners with the result that no one but relatives was admitted. The problem of valuing the properties which the petitioner owned in the latter part of June 1940 was, and is, an extremely difficult one. This record shows that the four negotiators, despite their relationship, exercised independent judgment in a businesslike and unsentimental way in reaching their agreement. They were friendly, kindly disposed towards each other, and appreciative of the abilities of the others. Donald, undoubtedly, wanted to help and encourage his brother, Philip, but he also wanted to make some money for himself. He had no intention whatsoever of making a bad bargain. Philip wanted the benefit of having his experienced brother in the business with him, but he did his best to see that Donald obtained an interest in his business upon a quid pro quo basis. These two felt that their cousin, Alexander, a young man of promise, would make a desirable *92 business associate. All knew that the future earning possibilities of the properties were great, but they likewise were aware of the many uncertainties which the future held. The final arrangements were made after much discussion and after some give and take on the part of all concerned. The following from Herbert Jones, 1 T.C. 1207, 1212 is apposite here: That section [Section 503, Revenue Act of 1932, as amended, now Section 1002 of the Internal Revenue Code] can scarcely mean that all arm's length business transactions, involving transfers of property, shall be subjected to scrutiny and, in every case where one party makes a bad bargain, he should have his misfortune increased by the imposition of a gift tax on his unfavorable balance from the transaction * * * "Gift' is not defined in the statute. The respondent, however, has himself defined the term as used in the controlling statute as excluding arm's length business transactions, such as evidenced here, in which there was no donative intent. It does not appear here that any of these participants obtained a bad bargain. Each was canny and tried to avoid that misfortune, thus, any difference *93 in value between what the petitioner gave and what he received (excluding the $40,000 of gifts) came about inadvertently and was not intended by the petitioner as a gift. Decision will be entered for the petitioner.