EDMUND C. CONVERSE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 4872. Promulgated October 31, 1945.

*John F. Dooling, Jr., Esq.*, for the petitioner.
*Henry C. Clark, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in gift tax of this petitioner for the calendar years 1941 and 1942 in the amounts of $110,595.13 and $1,215.00. The deficiency for 1942 resulted entirely from the adjustment of total net gifts for preceding years and that in turn resulted entirely from the changes made for 1941. The petitioner alleges that the Commissioner erred in determining that a gift of $625,000 was made to the petitioner's former wife and a gift of $47,464.24 was made to his daughter in 1941. The parties filed a lengthy stipulation of facts.

The petitioner is an individual, residing in Nevada. He filed gift tax returns for the years 1941 and 1942 with the collector of internal revenue for the second district of New York.

The petitioner was married in 1928 to Velma R. Converse. They had one child, a daughter, Melissa, born in 1938. The petitioner and his wife separated, and on March 17, 1941, they entered into an agreement whereby the petitioner was to pay his wife $1,250 a month during her life for her support and he was also to set up a trust fund of $100,000 for the benefit of Melissa. The petitioner set up the trust for his daughter on April 17, 1941, and placed therein $100,000 in cash.

Velma obtained a divorce from the petitioner in March 1941 in Nevada. She and the petitioner were present in person and were represented by counsel at that time. The divorce has remained in full force and effect. Velma, in her complaint, alleged that the parties had entered into the agreement on March 17, 1941, in settlement of all property rights and for the custody and support of the child, which agreement, she alleged, was fair and for the best interests of all concerned. The petitioner contested this allegation and contended for a lump sum settlement. The parties agreed upon a settlement in the amount of $625,000, and the court decreed that the petitioner pay his wife $625,000 in cash in lieu of the monthly payments provided in the separation agreement and that upon payment of the $625,000 the petitioner should be fully discharged of all property rights and claims for the support and maintenance of Velma. It further decreed that in other respects the agreement of March 17, 1941, was ratified, adopted, and approved and should be complied with. The petitioner then paid Velma $625,000 in 1941 in accordance with the decree of the court.

Evidence was introduced to show that the settlement whereby the petitioner established the trust for his daughter and paid his wife $625,000 was arrived at after negotiations between the parties in which counsel for the parties were endeavoring to obtain a settlement for the best interests of their separate clients.

The Court held in *Herbert Jones*, 1 T. C. 1207, that a husband residing in Nevada who paid his wife a lump sum in settlement of her claims against him was not liable for gift tax on the amount, where it appeared that it was incident to a divorce obtained in Nevada. The case of *Commissioner* v. *Bristol*, 121 Fed. (2d) 129, reversing *Bennet B. Bristol*, 42 B. T. A. 263, was discussed and distinguished on the ground that it involved a prenuptial agreement. A petition for review addressed to the Circuit Court of Appeals for the Seventh Circuit in the *Jones* case was dismissed on August 23, 1943. The Commissioner does not contend that the *Jones* case is distinguishable from the present case, but argues that it is no longer the law, since the error

therein was pointed out by the subsequent decisions of the Supreme Court in *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308. This Court, in the *Wemyss* case, pointed out the difference between that case and the *Jones* case. The two Supreme Court cases just mentioned, as well as the *Bristol* case, all dealt with antenuptial agreements. The Supreme Court did not deal with the question which was in the *Jones* case and did not indicate its views on that question. We follow the *Jones* case and hold that the Commissioner erred by increasing the petitioner's taxable gifts for 1941 by the amount of $625,000 which he paid to his wife. Cf. *Commissioner* v. *Mesta*, 123 Fed. (2d) 986; certiorari denied, 316 U. S. 695; rehearing denied, 317 U. S. 704.

The Commissioner has also increased the taxable gifts reported by the petitioner by $47,464.24, which he says represents that portion of $100,000 not required for the support of Melissa during her minority. He thus concedes that the remainder of the $100,000 was transferred for an adequate consideration in money or money's worth represented by a discharge of the petitioner's obligation to support his minor daughter. The only contention of the petitioner with respect to this adjustment is that the establishment of the trust for Melissa was but an inseparable part of the settlement agreement which he made with his wife, so that what he transferred in 1941 was either all gift or no gift at all. There is little or no evidence on this point or to show whether or not there was any bargaining in connection with the establishment of the trust. The petitioner may have done more for his infant daughter than the minimum required by the law. We are unable to find from the evidence that the Commissioner erred in holding that the petitioner made a gift to the trust in the amount determined by him.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

ARNOLD, *J.*, dissenting: I think the majority errs in following *Herbert Jones*, 1 T. C. 1207. The doctrine of that case has, in my opinion, been repudiated by the Supreme Court in *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308, and no basis for a distinction between antenuptial and postnuptial transfers now exists.

The First Circuit in *Commissioner* v. *Bristol*, 121 Fed. (2d) 129, reversing 42 B. T. A. 263, accepted the Commissioner's theory, which we had rejected, that the comparable sections of the estate and gift tax laws should be construed alike. Our *Jones* case brushed aside this

reversal with the remark: "We have not, however, departed from the view expressed in our opinion in that case." But the *Jones* case also distinguished the *Bristol* case upon the ground that the latter involved an antenuptial agreement, whereas the *Jones* case involved a post-nuptial agreement in connection with a divorce, which we there said was "a far cry" from antenuptial transfers.

In the *Wemyss* and *Merrill* cases the Supreme Court, by its own statements and by approving the reasoning of the First Circuit in the *Bristol* case, forced us to depart from the views we expressed in our *Bristol* case and reaffirmed in our *Jones* opinion. The *Converse* case follows the *Jones* case, because both cases involved a postnuptial transfer, but, contrary to the latter case, it omits any reference to our previously expressed views on antenuptial transfers. Inherent in the *Converse* opinion is recognition of the rule, established by the *Wemyss*, *Merrill*, and *Bristol* cases, that antenuptial transfers in relinquishment of marital rights are taxable as gifts, because the promised relinquishment of marital rights is not considered to any extent full and adequate consideration in money or money's worth for the property transferred. In other words, the *Converse* opinion recognizes that the estate and gift tax laws should be construed alike when the transfers are antenuptial. If comparable provisions of the estate and gift tax laws are to be construed alike with respect to antenuptial transfers of property, there is no logical reason why a different rule should apply to post-nuptial transfers. And it seems equally logical that, if the release of marital rights is not full and adequate consideration in money or money's worth for the transfer of property before marriage, the release of the same rights in exchange for property after marriage brings no better or more adequate consideration in money or money's worth into the transferor's estate. *Wemyss* and *Bristol* cases, *supra*.

The 1932 amendment to the estate tax act provided that the relinquishment or promised relinquishment of marital rights "shall not be considered to any extent a consideration 'in money or money's worth.'" In the *Merrill* case, *supra*, the Supreme Court construed the 1932 amendment to be a clarification of the estate tax law as it existed prior to the amendment. Specifically, the Court said:

* * * Plainly, the explicitness was one of cautious redundancy to prevent "subversion of the legislative intent." Without this specific provision, Congress undoubtedly intended the requirement of "adequate and full consideration" to exclude relinquishment of dower and other marital rights with respect to the estate tax. *Commissioner* v. *Bristol*, 121 Fed. (2d) 129; *Sheets* v. *Commissioner*, 95 Fed. (2d) 727.

The Supreme Court then in effect read the estate tax amendment into the gift tax law by holding that the estate tax and gift tax laws

should be construed harmoniously, that there was every reason for giving the same words in the gift tax the same reading, that strong reasons urge identical construction, and that to hold otherwise would encourage tax avoidance and would not fulfill the purposes of the gift tax.

In the *Bristol* case, cited in the above quotation, the First Circuit, in discussing the estate tax as amended and the gift tax, stated that "the amendment was added merely from an abundance of caution and should be regarded as declaratory of the law as it previously existed," that it seems improbable that identical phrases should be accorded a different meaning in the gift tax, enacted at the same time, and that an important purpose of the gift tax was to discourage the avoidance of surtaxes by the division of income-producing assets among members of the family. The *Sheets* case, cited by the Supreme Court, also states that the 1932 amendment should be regarded as a declaratory definition of terms.

These authorities convince me that the same rule applies to postnuptial transfers that applies to antenuptial transfers. They establish that the 1932 estate tax amendment added no new law; that the amendment was merely declaratory of existing law; that comparable provisions of the estate tax and gift tax laws should be construed alike, regardless of the 1932 amendment; and that the gift tax, like the estate tax, reaches postnuptial transfers.

This brings up the question of consideration, who shall receive it, and what constitutes full and adequate consideration in money or money's worth under section 503 for property transferred. The majority holds that Converse received "full and adequate consideration in money or money's worth for the $625,000 paid out of his estate. In the *Wemyss* case the Supreme Court definitely stated that : "if we are to isolate as an independently reviewable question of law the view of the Tax Court that *money consideration must benefit the donor to relieve a transfer by him from being a gift, we think the Tax Court was correct.* See *Commissioner* v. *Bristol*, 121 F. 2nd 129." (Emphasis supplied.) The *Bristol* case stated in this connection that " 'Consideration', as used in section 503, is not the same as common law consideration ; it means that when the transferor gives something away and does not at the same time replace it with money of equal value or some goods or services capable of being evaluated in money, he is deemed to have made a gift within the taxing law."

The Commissioner has determined that the present transaction was a gift. It is incumbent upon petitioner to overcome this determination by a showing that he received adequate and full consideration in

money or money's worth for the $625,000 transferred out of his estate. A showing sufficient to support a contract is not enough. Under the *Wemyss* case it must appear that the consideration benefited the donor to relieve a transfer by him from being a gift. Under the *Bristol* case, which was approved by the Supreme Court, the taxpayer must show that he received for the property transferred money or property of equal value, or goods or services capable of being evaluated in money. The evidence in this case does not show that Converse received anything of monetary value for his postnuptial transfer. Nothing is shown as to the value of the wife's marital rights or the financial standing of Converse before or after the transfer. Petitioner has failed to show that he received adequate and full consideration in money or money's worth under the gift tax statute. For these and the aforementioned reasons, I think the Commissioner's determination should be approved.

TURNER, *J.*, agrees with this dissent.

---

TURNER, *J.*, dissenting: In reaching its conclusion herein, the Court seeks to avoid the impact of the decisions of the Supreme Court in *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308, by pointing out that in those cases the Court was dealing with antenuptial agreements, while in *Herbert Jones* and in this case we were and are dealing with postnuptial agreements. In all of the above cases the ultimate question is the same, namely, whether surrender of marital rights constitutes consideration in money or money's worth within the meaning of the gift tax statute. That the Supreme Court intended to pass on the ultimate question in *Merrill* v. *Fahs* without regard to the fact that the rights of the donee, at the time of the agreement, were contingent upon the subsequent marriage of the parties, the agreement in that case being antenuptial, is in my opinion definitely indicated by the following statement from the Court's opinion:

> We put to one side the argument that in any event Miss Demare's contingent interest in her husband's property had too many variables to be reducible to dollars and cents, and that any attempt to translate it into "money's worth" was "mere speculation bearing the delusive appearance of accuracy." *Humes* v. *United States*, 276 U. S. 487, 494. We shall go at once to the main issue.

Thereupon the Court, as indicated in the dissent of Judge Arnold herein, proceeded to consider generally the question whether the surrender of marital rights constituted consideration in money or money's worth within the meaning of the statute, and decided that it did not.

ARNOLD and TYSON, *JJ.*, agree with this dissent.