Lewis Cass Ledyard, 3rd v. Commissioner.
Ledyard v. Commissioner
Docket No. 5766.
United States Tax Court
1946 Tax Ct. Memo LEXIS 238; 5 T.C.M. (CCH) 209; T.C.M. (RIA) 46071; March 20, 1946
*238 Will R. Gregg, Esq., Ben R. Clark, Esq., and Samuel E. Blackham, Esq., 2 Wall St., New York, N. Y., for the petitioner. Henry C. Clark, Esq., for the respondent. HARLAN Memorandum Opinion HARLAN, Judge: The Commissioner determined a deficiency of $25,902.31 in petitioner's gift tax for the calendar year 1941. A stipulation of facts, together with exhibits attached thereto or incorporated therein, is hereby adopted as our findings of fact. [The Facts] The petitioner, a resident of Huntington, New York, filed a gift tax return for the calendar year 1941 with the collector of internal revenue for the second district of New York, showing no tax due. The Commissioner, in determining the deficiency, held that the petitioner made gifts of $227,983.68 in 1941, as a result of a transfer of securities to his estranged wife, and the payment to her of $20,000 in cash. The petitioner concedes that the payment of $20,000 constituted a taxable gift (subject to being offset by the specific exemption). The petitioner married Evelyn T. Ledyard on July 22, 1935, and the sole issue of such marriage is a daughter, Evelyn Ledyard, who was born April 28, 1936. On or about April 14, 1940, petitioner *239 and his wife separated and continued to live apart. In 1941, his wife acquired a jurisdictional residence in the State of Idaho, and, on April 29, 1941, instituted a divorce proceeding on one of the District Courts of that state. In her complaint she alleged, inter alia, that an agreement settling the property rights of the parties would be submitted to the court for its approval and that the settlement was fair and just. This allegation was admitted in the petitioner's answer. While these proceedings were pending, petitioner and his wife through their respective attorneys negotiated a property settlement evidenced by an agreement dated June 7, 1941. In its preamble, the agreement states that its purpose, among others, was "to define and to settle their property rights and interests for their mutual welfare and * * * to make provision for the support and maintenance of the second party [the wife] and the education, support and maintenance of Evelyn Ledyard, and * * * to discharge the first party's [petitioner's] general obligation to the second party arising from the marriage contract and relationship;". Pertinent paragraphs of the agreement are the following: FOURTH: Each *240 of the parties hereto agree to and hereby does grant, convey, release and relinquish to the other and to such other's distributees, executors, administrators, representatives and assigns, all right, title and interest in the nature of curtesy or dower and rights or claims to the distributive share of the other's estate, real and personal, and all other property rights, interests or claims in any manner arising or growing out of the marriage relation in and to any and all property, real or personal, now owned or hereafter acquired by the other, except as herein expressly otherwise provided. * * *
FIFTH: The first party hereby makes the following provision for the support and maintenance of the second party and for the support, maintenance and education of Evelyn Ledyard: (a) The first party shall pay to the second party the sum of approximately $200,000. upon the execution of this agreement, by the delivery to her of the following securities: * * *
[securities listed] (b) During the period of the life of the second party, so long as she shall not remarry, the first party shall pay to the second party $9,000. annually, payable $750. monthly on the first day of each *241 calendar month commencing with the first day of June, 1941. (c) After the remarriage of the second party and until Evelyn Ledyard shall reach her majority, the first party shall pay the second party $1,500. annually, payable $125. monthly on the first day of each calendar month; * * *
A decree of absolute divorce was granted to Evelyn T. Ledyard on June 12, 1941. The agreement, which had been filed with the court, was approved and confirmed and made a part of the decree. Pursuant to the agreement and decree, the petitioner, on or about June 12, 1941, transferred to Evelyn T. Ledyard the securities specified in the agreement, having a market value at that time of $207,983.68. The monthly payments of $750 to Evelyn T. Ledyard were made from July 1, 1941, to September 1, 1943, when she remarried. Thereafter, the payments to her pursuant to the provisions of the agreement were reduced to $125 per month. Following the divorce, petitioner voluntarily gave her $20,000 in cash in addition to the payments stipulated in the agreement. In petitioner's income tax return for 1941 he reported a capital gain of $50,947.88 on the securities from the date of their acquisition until the date *242 of their transfer to his wife and paid the tax thereon, which tax has not been refunded. At the time of the transfer the petitioner possessed stocks and bonds of the value of $534,000, and, if he should outlive various life tenants of trust property, he was to receive, under the provisions of several trust instruments, approximately $3,000,000. Under the provisions of other trust instruments, petitioner had prospects of realizing a substantial amount of income during his lifetime from trust property. Petitioner received income during the year 1941 in the amount of $43,912, during 1942, $48,252, and during 1943, $47,495. [Opinion] The respondent contends that the agreement of June 7, 1941, definitely and for all time settled and set at rest the marital property rights of each party and was conspicuously a marital property settlement; and that a transfer of property to obtain relinquishment of marital interests is without consideration in money or money's worth, and, therefore, constitutes a taxable gift, citing Commissioner v. Wemyss, 324 U.S. 303, and Merrill v. Fahs, 324 U.S. 308. In support of this contention the respondent urges that this Court *243 should interpret the separate agreement as providing that only the $9,000 annual payment was for support and maintenance and that the transfer of securities was in consideration of the wife's release of marital rights in the estate of the husband. We do not agree that the agreement is susceptible of this interpretation. The Fifth Paragraph of the agreement specifically states that the transfer of the securities and the annual payments to be made to both the wife and daughter constitute the provisions made by petitioner for their support and maintenance. These obligations of the petitioner "for the maintenance and support of the plaintiff [his wife] * * * and said minor child" were ratified and confirmed by the Court and incorporated in and made a part of its decree. In satisfaction of petitioner's recognized responsibility to support his daughter during her minority his provision of $1,500 per year was certainly not excessive. Deducting this from the $9,000 provided for both the wife and daughter prior to the wife's remarriage would leave $7,500 per year, less income tax deductions after 1942, for the wife's support. The fact that the Fourth Paragraph contains mutual releases of *244 dower and other property rights does not justify the conversion of a part of a fund provided for maintenance and support into a payment for release of such rights. The mutual releases have no apparent connection with the settlement of the wife's rights to maintenance and of the obligation of petitioner to support his minor child. The respondent apparently concedes that in so far as the amount transferred in property or money was in consideration for the relinquishment by the estranged wife of her right to support and maintenance, the transfer did not constitute a taxable gift, and he did not include the monthly payments made to the wife in the amount he determined to be taxable as a gift in 1941. Our best judgment is, however, that the securities transferred and the monthly payments, and not the monthly payments alone, constituted the consideration paid by the petitioner for the relinquishment by the wife of her marital right to support and maintenance. It follows, and we hold, that the respondent erred in treating the value of the securities transferred as a taxable gift. Herbert Jones, 1 T.C. 1207; Edmund C. Converse, 5 T.C. 1014; Matthew Lahti, 6 T.C. 7 *245 (January 8, 1946); Clarence B. Mitchell, 6 T.C. 159 (January 31, 1946); and Lasker v. Commissioner, 138 Fed. (2) 989. In the Coversee case, we discussed the decisions of the Supreme Court in Merrill v. Fahs, supra, and Wemyss v. Commissioner, supra, relied upon by the respondent, and pointed out why they were not controlling in cases such as we have here. It would serve no useful purpose to here repeat what we said in the Converse case. The parties have stipulated that petitioner is entitled to the deduction from the amount of any taxable gift made by him during the year 1941, of a specific exemption of up to and including $40,000. Petitioner's concession that the $20,000 cash payment made to his former wife after the divorce in 1941, constituted a gift, does not therefore result in any gift tax liability inasmuch as the amount of this gift does not exhaust the specific exemption. Judgment of no deficiency will be entered.