Clarissa H. Thomson v. Commissioner.
Clarissa H. Thomson v. Commissioner
Docket No. 11618.
United States Tax Court
1947 Tax Ct. Memo LEXIS 162; 6 T.C.M. (CCH) 822; T.C.M. (RIA) 47194; June 27, 1947
Roger W. Hardy, Esq., 53 State St., Boston, Mass., for the petitioner. Paul P. Lipton, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: Respondent determined a deficiency in gift tax for the year 1944 in the amount of $14,265. The only question is whether a payment of $94,000 which petitioner made to her then husband as part of a separation agreement represented a gift. A gift tax return was filed with the collector for the *163 district of Massachusetts. Findings of Fact Some facts have been stipulated. The stipulation is adopted as findings of fact. Petitioner is a resident of Brookline, Massachusetts. She was born in 1875. At the age of 68 years she married Walter F. Reeves, who was 47 years old, a widower and the father of two children born of his first marriage. Petitioner married Reeves on August 11, 1943. After their marriage, the Reeves lived in Swampscott, Massachusetts. Seven months after the marriage there were discussions relating to separation, and the spouses separated in February 1944. The separation was the result of a mutual attitude. Petitioner consulted her attorney in February 1944. Negotiations for a separation agreement were conducted during March. On March 31, 1944, petitioner and Reeves executed a separation agreement. Under the agreement, petitioner agreed to pay Reeves $94,000. She paid that amount to him on May 8, 1944. On December 11, 1944, an Idaho District Court entered a decree of divorce granting petitioner an absolute divorce from Reeves. The decree contained the following clause as part of the ORDER and DECREE: "That a final division and distribution of the estate, *164 real and personal, of the plaintiff and defendant as stated in a property settlement agreement dated the 31st day of March A.D. 1944, and made a part of the complaint filed herein, be and the same is hereby confirmed and approved." Petitioner had her name changed from Clarissa Reeves to Clarissa H. Thomson by decree of the Norfolk County Probate Court dated June 21, 1946. Petitioner is a person of substantial assets and income. She is the life beneficiary of the Elihu Thomson trust which had property in trust of a value of about $400,000 on March 1, 1944. Petitioner's gross income in 1944 was about $31,800. On March 1, 1944, petitioner created a revocable trust to which she transferred securities of a value of $300,000. Walter Reeves is not a beneficiary of that trust. In January of 1944, petitioner deposited $4,000 in eight separate bank accounts in the name of Walter Reeves for his own use. The total amount, $32,000, was a gift to Reeves. Petitioner reported $32,000 gifts in the gift tax return which she filed for 1944. Petitioner reported the transfer of $94,000 to Reeves in her 1944 gift tax return as a non-taxable transfer. She made notation in the return that she had *165 paid Reeves $94,000 in cash to settle all property rights pursuant to a separation agreement which was followed by a divorce, and that she believed that the transfer was not taxable under the gift tax. Walter Reeves filed a donee's information return of gifts for 1944 in which he reported the gift of $32,000, and the item of $94,000. He made the notation in his information return that he had received such sum, that Clarissa "Reeves" claimed that it was not a gift, and that he set forth the amount as donee "without prejudice to the rights of Clarissa Reeves to claim that the same was not a gift." Reeves was chief of police in the town of Swampscott, in 1943. His salary was $3,600 per annum. He owned his home which had cost him about $14,000. After his marriage to petitioner, the house was sold for about $8,000. At the time of the separation, Reeves owned only personal property and savings in bank deposits totalling less than $5,000. Also, he was not employed. However, Reeves was in good health; he was not physically incapacitated; he was able to work and willing to do so. He owned a saddle horse which he rode. He went on hunting trips. Reeves is an expert rifle and pistol marksman, *166 the only hip-shooter in the East. He had given, in 1943 and before, rifle and pistol shot exhibitions in which he demonstrated various accomplishments, such as shooting in total darkness. He received payments for his shooting exhibitions of $50 an exhibition. He made $300 a week, at times, in shooting exhibitions. He also gave exhibitions of all forms of self-defense, judo, hand clubs, etc. He gave such exhibitions for military organizations and civilian defense organizations. He traveled over the state giving such exhibitions for which he received compensation. He was able to do carpentry. In 1943 he had a plan of going into the business of fire-arms repairing, making and selling. At one time Reeves called himself a tree surgeon and did the work of pruning and caring for trees. In his work as a police officer, Reeves studied ballistics and fingerprints. After the separation in 1944, Reeves was still able to carry on his many skills and employments. He went into a business of buying real estate and remodeling houses with the capital which petitioner had transferred to him. If he had not gone into that kind of business, he could have employed himself in other ways which would have *167 enabled him to earn a living. Reeves had been in the police service in Lynn, Massachusetts, before he went to Swampscott. He served as chief of police of Swampscott for about 17 years. He enjoyed the work for the first three years, but thereafter he did not get on well with the selectmen. In 1943, and for several years before, he disliked his job. In 1943, at some time before August 6th, he asked for retirement under pension. Under some provision of law applicable to veterans, he had a right to retire providing he was not physically fit. The Town objected to paying Reeves a pension because he was physically fit. He was never granted the pension. He resigned on August 6, 1943, which was a few days before his marriage to petitioner on August 11, 1943. At the time Reeves applied for retirement with pension he had just passed an examination for military service at Fort Banks. The deceased wife of Reeves and petitioner had been friends. Petitioner and the two children of Reeves were fond of each other. Before and after separation, petitioner and Reeves were friends. The decision to separate came after both decided that each person made the other one nervous. At the time of the separation *168 divorce was not mentioned. Reeves did not know that petitioner had decided to get a divorce until some papers were served on him on November 8, 1944. The separation agreement and the amount of petitioner's payment to Reeves were discussed during conferences among petitioner, Reeves and petitioner's lawyer. Reeves engaged a lawyer who discussed with petitioner's lawyer the amount of petitioner's payment to Reeves. The payment to Reeves was discussed in terms of repaying to him about $14,000 for the house which he had owned at the time of the marriage, plus about $100,000 which would yield to Reeves an annual income of $4,000 a year, or thereabouts. The sum of $94,000 was finally agreed upon. The possibility of Federal gift tax was discussed. The separation agreement is incorporated herein by reference. The agreement provided, inter alia, that the parties mutually released each other from all claims, and that each relinquished all claims he or she had to participate in the estate of the other. Opinion Petitioner contends that the transfer of $94,000 in 1944 to her then husband was not a gift within the provisions of sections 1000 and 1002 of the Internal Revenue Code *169 . Petitioner contends that she had an obligation to provide for the support of Reeves, that she did so provide under the separation agreement, and that discharge from this obligation incident to the separation agreement constituted adequate and full consideration in money or money's worth. Petitioner relies chiefly upon Clarence B. Mitchell, 6 T.C. 159. In the Mitchell case, a husband had an undisputed legal obligation to support a wife and four children. He made transfers of property whereby he obtained discharge of his legal obligations. This Court held that the release from making continuing cash expenditures for years to come constituted adequate and full consideration in money or money's worth. The facts in this case differ so greatly from the facts in the Mitchell case, and in Edmund C. Converse, 5 T.C. 1014; and in Herbert Jones, 1 T.C. 1207, that petitioner's theory must be said to be unusual. Petitioner had no obligation to support Reeves. The theory that she had such obligation has been developed from reference to a provision in the General Laws of Massachusetts (Ch. 208, sec. 34), which permits a court to decree alimony from a wife's *170 estate to her husband upon a divorce. Petitioner did not testify in this proceeding. Reeves was the chief witness. There is no evidence in this case which provides ground for any theory that if petitioner and Reeves had undertaken to get a divorce in Massachusetts, Reeves could have obtained a decree awarding alimony to him out of petitioner's estate. There is no evidence that he had any ground for an absolute divorce from petitioner. Furthermore, there is no evidence from which it could be said that petitioner had any legal obligation to provide support to Reeves upon a separation. It is our understanding that section 34, chapter 208 of the General Laws of Massachusetts applies only in the event of a decree of absolute divorce. Topor v. Topor, 287 Mass. 473. We must reject petitioner's theory and argument. It is concluded that the question here is not controlled by Clarence B. Mitchell, supra.Reeves was in his early middle age, sound, robust and able and willing to earn a living. Petitioner had no obligation to support him, as far as the record shows, the discharge and release of which could constitute consideration received for money paid by her. Furthermore, *171 the facts in this case do not in our opinion bring it within the recent ruling of the Commissioner in E.T. 19, Cumulative Bulletin, No. 16, p. 10; August 16, 1946. Here there was no release of "support rights." The fact that petitioner had substantial wealth whereas Reeves was not so fortunate is not, alone, sufficient to give support to petitioner's theory. Because of special facts in this case, petitioner, on brief, concedes [1] that she did not receive any consideration for the payment to Reeves by virtue of his relinquishment of his curtesy rights and any and all claims to her estate. Petitioner has not founded her contention in this proceeding upon such theory. Therefore, this case does not present the occasion for giving consideration to the principles stated in Merrill v. Fahs, 324 U.S. 308; and Wemyss v. Commissioner, 324 U.S. 303, or to the impact, if any, of those decisions upon the separation agreement involved in this case. Cf. Edmund C. Converse, supra.
*172 It is held that the transfer of $94,000 to Reeves in 1944 constituted a gift. Respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. Petitioner states on brief as follows: In determining the amount she should pay her husband, petitioner had no need to consider his possibility of inheritance from her under General Laws, (Mass.), Ch. 190, Sec. 1, or * * * Ch. 191, Sec. 15. * * *.↩