ESTATE OF JOSEPHINE S. BARNARD, DECEASED, CITY BANK FARMERS TRUST COMPANY, EXECUTOR, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9180.    Promulgated July 16, 1947.

*James C. Mulligan, Esq.*, for the petitioner.
*William B. Springer, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: This proceeding involves the determination by the respondent of a deficiency in gift tax against Josephine S. Barnard for the calendar year 1943 in the amount of $21,825. After filing her petition with this Court, Josephine S. Barnard died on February 4, 1946. City Bank Farmers Trust Co., a banking corporation duly organized and existing under the laws of the State of New York and having its principal place of business in New York City, was duly appointed executor of the estate of Josephine S. Barnard, deceased, and by order of this Court it was substituted as the petitioner herein.

Josephine S. Barnard filed a gift tax return for the calendar year 1943 with the collector for the twenty-eighth district of New York. The return showed no tax to be due. In determining the above mentioned deficiency, the respondent, in a statement attached to the deficiency notice, made and explained adjustments to net gifts as follows:

### Adjustments to Net Gifts

| Schedule A of return | Returned | Determined |
|---|---|---|
| Total gifts | 0.00 | 100,000.00 |
| Less exclusions | | 3,000.00 |
| Total included amount of gifts | 0.00 | 97,000.00 |
| Less Specific exemption | 0.00 | 0.00 |
| Net gifts, 1943 | 0.00 | 97,000.00 |
| Net gifts for preceding years | 110,000.00 | 120,000.00 |
| Total net gifts | $110,000.00 | $217,000.00 |

### Explanation of Adjustments

| | Returned | Determined |
|---|---|---|
| Schedule A of return | 0.00 | $100,000.00 |

It is held that the transfers made on August 12, 1943 and October 25, 1943 of $50,000.00 each under the terms of the separation agreement dated August 12, 1943, were made without an adequate and full consideration in money or money's worth and therefore constitute taxable gifts under the provisions of Chapter 4 of the Internal Revenue Code.

Petitioner, by appropriate assignments of error, contests the determination of the Commissioner that $100,000 should be added to the 1943 gift tax return by reason of the two transfers of $50,000 each which Josephine S. Barnard made in that year to Henry H. Barnard. The facts were stipulated. We adopt the stipulation as our findings of fact.

Josephine S. Barnard (hereinafter sometimes referred to as Mrs. Barnard), born March 27, 1904, and Henry H. Barnard (hereinafter sometimes referred to as Barnard), born July 8, 1904, intermarried on June 7, 1924, and there were issue of the marriage, to wit, Josephine Goodyear Barnard (Keaveny), born July 27, 1926, and Bruce Eaton Barnard, born May 27, 1935.

On or about September 15, 1937, the Barnard family moved to a rented house in Washington, D. C., where they continued to reside until about the Spring of 1941, at which time they moved into a leased apartment in Washington, D. C., where they continued to reside as a family until they separated, as hereinafter set forth, after which time Mrs. Barnard retained possession of the apartment until on or about October 30, 1943. During the aforesaid period, Barnard and Mrs. Barnard at all times lived in Washington, D. C., except during brief summer vacations, when they occupied Mrs. Barnard's summer cottage in Massachusetts.

Differences having arisen between the parties, they separated early in July of 1943, and shortly thereafter Mrs. Barnard retained an attorney to represent her and to negotiate a separation agreement. On August 12, 1943, the parties entered into a written separation agreement, the material provisions of which are as follows:

Now, THEREFORE ` * * * the parties hereto hereby covenant and agree to and with each other as follows:

    *        *        *         *        *        *        *

SECOND: * * *

    *        *        *        *        *        *        *

(e) The Husband hereby transfers, aliens and enfeoffs, quitclaims, sells, conveys and releases unto the Wife any and all statutory or other interest at law or in equity, in, to or in connection with any and all real property owned by the Wife in any state, territory or possession of the United States, and in the District of Columbia, and in all foreign countries, and the Wife hereby transfers, aliens and enfeoffs, quitclaims, sells, conveys and releases unto the Husband any and all statutory or other interest, at law or in equity, in, to or in connection with any and all real property owned by the Husband in any state, territory or possession of the United States, and in the District of Columbia, and in all foreign countries.

THIRD: The Wife has, simultaneously with the execution hereof, receipt whereof is hereby acknowledged by the Husband, paid to the Husband the sum of Fifty Thousand ($50,000) Dollars, by payment in cash or by Secretary's check of City Bank Farmers Trust Company of the sum of Thirty-Nine Thousand ($39,000) Dollars and by cancellation and surrender of a ninety (90) day promissory note of the Husband, dated August 6, 1943, in the amount of Eleven Thousand ($11,000) Dollars.

FOURTH: The Wife shall have complete custody of the Children * * *.

    *        *        *        *        *        *        *

TENTH: The Wife expressly relinquishes and releases any and all dower right of election to take any share of the estate of the Husband as in intestacy and any and all other right and interest in any property, real, personal or mixed, of which the Husband may die seized or possessed, and the Wife renounces and covenants

to renounce any right of administration upon the estate of the Husband, if and as required by the laws of practice of any jurisdiction whatsoever; provided, nevertheless, that nothing herein contained shall be construed to prejudice any right or remedy of the Wife or of the Children in respect of any of the provisions of this agreement.

The Husband agrees to release and does hereby release any and all claims to or upon the property of the Wife, whether real, personal or mixed, to the end that she shall have free and unrestricted right to dispose of any and all of her property heretofore or hereafter acquired free from any and all claims or demands of the Husband and so that her estate shall go and belong to the person or persons who become entitled thereto by will or by devise, bequest, intestacy, administration or otherwise as if the Husband had died during the lifetime of the Wife, and, without in any manner limiting the generality of the foregoing, the Husband expressly relinquishes and releases any and all right of curtesy, or right of election to take any share of the estate of the Wife as in intestacy and any and all other right and interest in any property, real, personal or mixed, of which the Wife may die seized or possessed, and the Husband renounces and covenants to renounce any right of administration upon the estate of the Wife, if and as required by the laws of practice of any jurisdiction whatsoever; provided, nevertheless, that nothing herein contained shall be construed to prejudice any right or remedy of the Husband or of the Children in respect of any of the provisions of this agreement.

\*      \*      \*      \*      \*      \*      \*

TWELFTH: Conditional upon the Husband performing his obligations under the provisions of this agreement, the Wife agrees that she shall not and will not hereafter incur or cause to be incurred any debts or liabilities whatsoever whether for necessaries or otherwise, upon the credit of the Husband, and the Wife shall and will hold the Husband free and harmless from, and to that end she shall and will satisfy and discharge all debts, liabilities and obligations of every kind and nature whatsoever, including those incurred for necessaries for herself and for the Children, or either of them, which may hereafter exist against or be incurred or contracted by her or for her account or for the account of the Children or either of them.

Conditional upon the Wife performing her obligations under the conditions of this agreement, the Husband agrees that he shall not and will not hereafter incur or cause to be incurred any debts or liabilities whatsoever whether for necessaries or otherwise, upon the credit of the Wife and the Husband shall and will hold the Wife free and harmless from, and to that end he shall and will satisfy and discharge all debts, liabilities and obligations of every kind and nature whatsoever, including those incurred for necessaries for himself, which may hereafter exist against or be incurred or contracted by him or for his account, and, if the Wife shall be required to pay or discharge any such debt or liability, she shall give reasonable notice thereof, and opportunity to pay or discharge the same, to the Husband before doing so, and if she does, in fact, pay or discharge any such debt or liability, then and in any such event the amount thereof shall, pursuant to written notice given by her to City Bank Farmers Trust Company, as Trustee under an irrevocable trust agreement, dated December 20, 1941, for the benefit of the Husband, be paid to her out of the income of said trust and deducted from the next ensuing payment or payments required to be made by the Trustee to the Husband under the terms of the said trust agreement.

THIRTEENTH: In the event of a decree of separation or divorce between the Husband and the Wife, the provisions hereof may be embodied in such decree and may be made a part thereof; provided, however, that no insertion in any

such decree of any of the provisions of this agreement or of the substance thereof shall affect or in any manner alter the terms and conditions of this agreement.

FOURTEENTH: The Wife stipulates, represents and agrees that this separation agreement has been agreed upon and is being executed by mutual consent and upon and after consultation with and advice of her attorneys, Messrs. Delafield, Marsh, Porter & Hope, of New York City, and with a view to the future.

The Husband stipulates, represents and agrees that this separation agreement has been agreed upon and is being executed by mutual consent, but without consultation with independent counsel, the Husband having expressed his desire not to consult counsel, although urged to do so by the Wife and her counsel, and with a view to the future.

Pursuant to paragraph third of the separation agreement, Mrs. Barnard paid $50,000 to Barnard on the execution of the agreement.

On October 20, 1943, Mrs. Barnard obtained a divorce from Barnard in the Second Judicial Court of the State of Nevada in and for the County of Washoe. As a part of the decree the said court ordered, adjudged, and decreed as follows:

2. That the written agreement, dated August 12, 1943, made and entered into by the plaintiff and the defendant herein, settling the property rights of the plaintiff and the defendant, and all matters concerning the care, custody and control of the minor children of said parties, a true, full and correct copy of which said written agreement has been admitted in evidence in this action and marked and designated as "Plaintiff's Exhibit A" herein, be, and the same hereby is, by this Court, ratified, adopted and approved in all respects, and with the same force and effect as if said agreement were annexed hereto and set out in haec verba as a part hereof; and said agreement is hereby declared to be fair, just and equitable to the plaintiff, to the defendant, and to the said minor children.

There was an oral agreement entered into between Barnard and Mrs. Barnard simultaneously with the written agreement of August 12, 1943, which oral agreement was to the effect that when and if Mrs. Barnard obtained a divorce she would make a payment of $50,000 to the City Bank Farmers Trust Co., to be held by it, as trustee, under and in accordance with the terms and provisions of a preexisting trust agreement dated December 19, 1941.

On December 19, 1941, Mrs. Barnard had created three irrevocable trusts, one for the benefit of her daughter, one for the benefit of her son, and one for the benefit of Barnard during his life. At the time of the creation of these three trusts, property of the value of $50,000 was transferred to each trust as the corpus thereof. The $50,000 referred to in the above mentioned oral agreement, if paid, was to be paid into the trust for the benefit of Barnard during his life, thus bringing the corpus of that trust up to $100,000. Among other things, the trust for Barnard provided that the net income therefrom was to be paid to Barnard during his life and, upon his death, the trustee was to pay one-half of the corpus into the trust for the benefit of the daughter and was to pay the other one-half into the trust for the benefit of the son, with other provisions that are not material here.

In pursuance of the above mentioned oral agreement and in order to cover the possibility of Mrs. Barnard's death before the oral agreement might be executed, Mrs. Barnard executed on August 13, 1943, a codicil to her will, the material provisions of which are as follows:

I, JOSEPHINE S. BARNARD, residing in the City of Washington, District of Columbia, being of sound and disposing mind and memory, do hereby make, publish and declare this Codicil to my Last Will and Testament, dated July 15, 1943.

FIRST: I give, devise and bequeath unto my Trustee named in said Last Will and Testament, the sum of Fifty Thousand ($50,000) Dollars, in trust, nevertheless, to invest and reinvest the same, to collect and receive the income therefrom and to dispose of the income and principal as follows: To pay the net income therefrom to my husband, Henry H. Barnard, in equal quarterly instalments during his life, and, upon the death of said Henry H. Barnard, to pay the principal thereof to itself, as Trustee, under the trust established pursuant to pararaph numbered "SIXTH" of my said Last Will and Testament.

On or about October 25, 1943, Mrs. Barnard carried out the aforementioned agreement and made the $50,000 payment to the City Bank Farmers Trust Co., as trustee of the trust for the benefit of Barnard during his life, and revoked the codicil she had executed on August 13, 1943.

At the time of the execution of the separation agreement, Mrs. Barnard was worth, in her own right, more than $600,000, consisting in part of real estate located at Osterville, Massachusetts, and worth at least $35,000, and, in addition, she was a life beneficiary under a trust created for her benefit by her grandfather, from which trust for a number of years, including 1943, she received an average annual income of at least $25,000.

The question here presented is whether the transfers made on August 12, 1943, and on or about October 25, 1943, of $50,000 each are subject to the Federal gift tax. The applicable statute and regulations are printed in the margin.[1]

We shall consider first the transfer made on August 12, 1943, in

---

[1] SEC. 1002. [I. R. C.] TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

SEC. 86.8 [Regulations 108]. TRANSFERS FOR A CONSIDERATION IN MONEY OR MONEY'S WORTH.—Transfers reached by the statute are not confined to those only which, being without a valuable consideration, accord with the common law concept of gifts, but embrace as well sales, exchanges, and other dispositions of property for a consideration in money or money's worth to the extent that the value of the property transferred by the donor exceeds the value of the consideration given therefor. However, a sale, exchange, or other transfer of property made in the ordinary course of business (a transaction which is bona fide, at arm's length, and free from any donative intent), will be considered as made for an adequate and full consideration in money or money's worth. A consideration not reducible to a money value, as love and affection, promise of marriage, etc., is to be wholly disregarded, and the entire value of the property transferred constitutes the amount of the gift.

pursuance of paragraph third of the separation agreement. The facts as to this transfer we think are not distinguishable in principle from the facts in the cases of *Lasker* v. *Commissioner*, 138 Fed. (2d) 989; *Herbert Jones*, 1 T. C. 1207; petition for review to C. C. A., 7th Cir., dismissed May 1, 1944; *Edmund C. Converse*, 5 T. C. 1014; on appeal to C. C. A., 2d Cir.; *Matthew Lahti*, 6 T. C. 7; and *Clarence B. Mitchell*, 6 T. C. 159; petition for review to C. C. A., 7th Cir., dismissed Oct. 7, 1946. In most business transactions made at arm's length, each party is seeking to profit, and the profits so realized are not gifts. As the court said in *Commissioner* v. *Mesta*, 123 Fed. (2d) 986: "We think that we may make the practical assumption that a man who spends money and gives property of a fixed value for an unliquidated claim is getting his money's worth." Here Mrs. Barnard was seeking to free her property from all claims of her husband and gave in payment therefor what she considered to be the reasonable value thereof. Since these claims were unliquidated, it may be assumed, as the court said in the *Mesta* case, that she received her money's worth and accordingly did not make a taxable gift of this $50,000 to Barnard. We hold, upon the authority of the above cited cases, that the transfer made on August 12, 1943, was made without donative intent in an arm's length transaction for an adequate and full consideration in money or money's worth and that the respondent erred in subjecting it to the Federal gift tax.

We think the transfer of $50,000 made by Mrs. Barnard on or about October 25, 1943, to the trust for the benefit of Barnard during his lifetime which she had created on December 19, 1941, before there was any thought of divorce, is in a different category. This transfer was made in pursuance of the oral agreement that was entered into between Barnard and Mrs. Barnard on the same day that the written settlement agreement was executed. The parties have stipulated that the "oral agreement was to the effect that when and if Mrs. Barnard obtained a divorce she would make a payment of $50,000" to the said trust. In other words, the said payment was only to be made "when and if" a certain event happened. We are unable to make a finding from the stipulated facts that Mrs. Barnard received any consideration for this transfer or that it was made for the cancellation or release of any unliquidated claim which Barnard had against her property. That had already been settled by the agreement of August 12, 1943, and the payment of $50,000 thereunder. That being so, it follows that the entire value of the property transferred in the second transfer ($50,000) "shall * * * be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year," within the specific provision of section 1002 of the Internal Revenue Code.

Petitioner in its reply brief contends that this Court must infer from the stipulated facts "that the transfer of the $50,000 to the preexisting trust was part and parcel of the entire separation agreement between the parties and that it was part of the price paid by Mrs. Barnard for the reliquishment by Mr. Barnard of all of his rights in her estate." We do not feel justified in making such an inference. There was no reference whatsoever made in the written separation agreement entered into on August 12, 1943, concerning the possible transfer of $50,000 to the preexisting trust. There is no evidence that the Nevada court knew anything about this possible transfer that the parties had orally agreed would be made "when and if" the divorce was granted. That court in its decree referred only to the written separation agreement as "settling the property rights of the plaintiff and the defendant, and all matters concerning the care, custody and control of the minor children of said parties," and the said agreement was by that court "ratified, adopted and approved in all respects" and "declared to be fair, just and equitable to the plaintiff, to the defendant, and to the said minor children." The transfer to the trust on or about October 25, 1943, was something over and above what the divorce court declared to be fair, just, and equitable. If there was a consideration for the transfer of the $50,000 to the trust there is no direct or explicit statement in the record of what that consideration consisted. The respondent has determined that the transfer was a taxable gift. It was incumbent upon the petitioner to overcome that determination by a showing that Mrs. Barnard received "an adequate and full consideration in money or money's worth" for the transfer. This we think petitioner has failed to do and we must, therefore, sustain the respondent's determination as to this transfer. It thus becomes unnecessary to consider a further contention made by the respondent relative to the transfer of the $50,000 to the trust, that in any event, the value of the remainder interests in the trust is subject to the gift tax. Cf. *Clarence B. Mitchell, supra.*

*Decision will be entered under Rule 50.*