EDWARD B. MCLEAN, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 14075.   Promulgated October 6, 1948.

*Abraham L. Bienstock, Esq.*, and *Richard A. Reiss, Esq.*, for the petitioner.

*Rigmor O. Carlsen, Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge*: During the pendency of a proceeding which resulted in a divorce decree, petitioner and his wife entered into a formal agreement relating to his duty of maintenance and support for the wife and two children, a division of property, a mutual release of claims, and an assignment by him to the children of fractional interests in certain trusts, of which he was a beneficiary. The agreement was ratified, approved, and confirmed by the court's decree of July 27, 1943, which granted the divorce and ordered each party to perform

his obligations under the agreement. Petitioner reported the value of the trust interests transferred to the children as gifts on a gift tax return filed for 1943, but reported no part of the benefits for the wife as gifts. The Commissioner recognized that other transfers and payments were partly in discharge of obligations imposed on petitioner, but, viewing the provision that he pay the wife monthly sums even after her remarriage as not an obligation imposed by law, he determined that "the value of this part of the contract constitutes a gift subject to gift tax," and computed the value at $24,286.96, which he added to the gifts reported. Although the wife did not in fact remarry until January 1947, and hence the formula requiring lesser payments after such event did not take effect until that time, the Commissioner nonetheless used the ages of the spouses in 1943 and the amount ($1,402.77) that would have been payable if the wife were remarried, reduced by deductions ($625) for death of the children, as factors in evaluating her right to receive the resulting $9,333.24 a year through 1955. As petitioner does not attack the computation factors, we do not discuss them.

Respondent defends his determination by the argument that petitioner was under no legal or moral obligation to support his wife after her remarriage, and hence his agreement to make payments to her after such event "constitutes a gift as to such payments." Petitioner argues, to the contrary, that the provision for such payments was in compromise to the wife's demand for a lump sum in addition to recurrent contributions to her support and should be treated like the lump sum settlements in *Converse* v. *Commissioner* (C. C. A., 2d Cir.), 163 Fed. (2d) 131, and *Albert V. Moore*, 10 T. C. 393, which were not held gifts; that in any event petitioner procured by his agreement a release from claims arising out of the marital relations, so that payments under it are supported in a full and adequate consideration, *Estate of Josephine S. Barnard*, 9 T. C. 61, and the obligation to pay, being fixed by court decree, was vested with the character of a debt. *Converse* v. *Commissioner, supra*.

It seems settled that transfers may be properly held gifts unless "the circumstances negatived the presence of a donative intent and showed an arm's length transaction." *Roland M. Hooker*, 10 T. C. 388. In respect of all payments due the wife, we are convinced that there was no donative intent, but that, on the contrary, the provisions for her benefit were the result of bargaining between the parties' two attorneys, which had as the sole object the securing of terms most advantageous economically for their respective clients. The wife demanded not only recurrent payments for support, but also a share in petitioner's trust rights. Her attorney's insistence on a lump sum payment of $110,000 was compromised by provisions which insured her receipt of $100,000 over the twelve-year period, 1943–1955, and by formulae applicable to

various contingencies her receipt of such an aggregate amount was made certain even though she should remarry.

If petitioner had agreed to pay her a lump sum immediately, it seems settled that the payment would not have been a gift, for by it and other undertakings he would have discharged his duty of support, effected a property settlement, and procured release from claims against him arising out of the marital relation. *Commissioner* v. *Converse, supra; Albert V. Moore, supra; Estate of Josephine S. Barnard, supra; Clarence B. Mitchell,* 6 T. C. 159; dismissed (C. C. A., 7th Cir.), Oct. 7, 1946; *Herbert Jones,* 1 T. C. 1207; dismissed (C. C. A., 7th Cir.), May 1, 1944. The release of such claims constitutes "an adequate and full consideration in money or money's worth" for the husband's payment, *Lasker* v. *Commissioner* (C. C. A., 7th Cir.), 138 Fed. (2d) 989, and this is no less true because a part of the payments is required to be made in the future. *Matthew Lahti,* 6 T. C. 7. Should the possibility that the wife may be remarried when she receives future installments convert them into gifts? We perceive no valid reason for so holding. Whatever effect the wife's remarriage might have on the husband's duty of support and the court's power to order his payment of such support, the remarriage would not alter the terms of the general settlement agreement or the court's power to enforce the decree incorporating it. Had a lump sum been paid after entry of the decree or securities transferred, or a trust created, remarriage would not have altered the character of such transfers as made in discharge of the husband's duty of support or in settlement of marital claims against him, although income from them might still contribute to the wife's support.

By incorporating the parties' general settlement agreement in the decree here considered, the court in our view did not intend to recognize or impose on petitioner a duty of support after the wife's remarriage. It merely gave sanction to the terms of an agreement requiring for a twelve-year period specified payments which incidentally might fall due after such event. The circumstances of the negotiations and the terms agreed upon give ample color to this testimony, and, viewing this provision of the agreement as a part of the consideration for the wife's release of claims and division of property, we sustain petitioner's contention that it was made for a full and adequate consideration in money or money's worth. As said by the Circuit Court of Appeals for the Third Circuit in *Commissioner* v. *Mesta,* 123 Fed. (2d) 986:

\* \* \* the amount of the taxpayer's obligation to his wife was fixed \* \* \* by the parties themselves who really dealt at arm's length with one another. \* \* \* We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth.

Respondent challenges this view, invoking E.T. 19, 1946–2 C. B. 166, in which he ruled that transfers of property pursuant to an agreement incident to divorce are not for an adequate and full consideration in money or money's worth and are hence taxable gifts under section 1002, Internal Revenue Code, to the extent that they are made in consideration of the release of marital rights except the right of maintenance and support. This ruling is based on holdings of the Supreme Court in *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308, both of which involved transfers made pursuant to antenuptial agreements. In the former the taxpayer made the transfer solely as an inducement to marriage, compensating the prospective bride for trust income which she lost by remarriage. In the latter the taxpayer made the transfer in consideration of marriage and the prospective bride's release of all rights that she might acquire as wife and widow in his property except the right to support.

We can not construe those holdings as covering a situation in which divorce has converted the wife's marital rights into immediately enforceable claims. By making the agreement under the circumstances here shown, petitioner was not gratuitously diminishing his taxable estate, but, on the contrary, was defending it by making the most advantageous settlement possible of the wife's claims against him. Conceivably, he could have transferred to her more than the minimum demanded or than the court ordered. Such an excess has been held a gift, *Estate of Josephine S. Barnard*, *supra* (second issue). But the evidence rebuts any inference that petitioner did not seek his best advantage in the negotiations leading to the agreement here considered. For reasons not clear to us, E. T. 19 excepts support and maintenance from marital rights the release of which does not constitute full and adequate consideration. We deem the ruling invalid in so far as it does not also except transfers made to settle presently enforceable claims.

In reaching the above conclusion, we have adhered to the contentions advanced by the parties. We take note, however, that the wife was not remarried until January 1947. When the gift tax return was filed in 1943, it was not certain that she would remarry, and, as respondent's determination rests wholly on the theory that some of the required payments were gifts as a consequence of remarriage, it rests wholly on the postulate of a contingency which had not then occurred. Nothing passed in 1943 from petitioner to the wife by virtue of the provision in controversy, and, if the wife had never remarried, or if either party had died before a remarriage, nothing would ever have passed, and the provision would have remained wholly inoperative. Even under the assumption, *arguendo*, that respondent was correct in his contention, we do not consider that petitioner made a gift in

1943 by promising to make specified payments in the future if and when the wife should remarry and if both should live until such event. Cf. *Fred G. Gruen*, 1 T. C. 130; *Lorraine Manville Gould Dresselhuys*, 40 B. T. A. 30.

Reviewed by the Court.

*Decision will be entered for the petitioner.*

---

DISNEY, *J.*, dissenting: In my view the result reached by the majority is wrong.

In the first place, as I understand the facts here, the respondent added $24,286.96 to the gifts reported by the petitioner on the theory that such amount was the present value of the transfer made to the wife so far as it covered any period after her remarriage. In short, he seems to have used actuarial tables to determine the present value of the gift up to the time of the wife's remarriage, leaving $24,286.96 ascribable to the period after remarriage. The transfer, during the period prior to remarriage, he recognized as being not a gift because of full and adequate consideration in money or money's worth, under the husband's duty to support the wife, within section 1002, Internal Revenue Code. The transfer after such remarriage he held to be gift because of the lack of such consideration. The use of tables to compute the probability of a wife's remarriage has been recognized by us in *Estate of Pompeo M. Maresi*, 6 T. C. 583; affd., 156 Fed. (2d) 929; and by the Supreme Court of the United States in *Brotherhood of Locomotive Firemen and Enginemen* v. *Pinkston*, 293 U. S. 96. We may, therefore, properly ascribe the $24,286.96 to the period after remarriage; and, in my view, there was no full and adequate consideration in money or its worth for the agreement to pay that amount and, therefore, it was properly determined to be gift. Though I do not say the divorce court could not award support and maintenance for a period after a wife's remarriage (though there is authority to that effect), it is clear that a court will ordinarily at least set aside any such provision, in case of remarriage. 27 C. J. S. 994. The husband's promise to pay after remarriage, therefore, is deemed to be without consideration, even in the ordinary sense, and certainly not to be based upon full and adequate consideration in money or its worth within the statute. Moreover, the majority opinion does not convince me that there was not donative intent in the ordinary sense so far as the husband agreed to pay the wife after remarriage. Nothing indicates that he was advised or under any impression that he would be required so to pay.

I further consider the majority view erroneous in that it appears to be based upon the idea that, because the wife contended for a share in petitioner's trust rights as well as rights to support, the agreement

to pay her even after remarriage was not gift. It is well settled that the rights to support afford full and adequate consideration in money or its worth—and the transfer, to that extent, is not here questioned by the respondent— but a transfer of property by the husband in consideration of the release of any marital rights is within the estate tax law, section 812 (b) of the Internal Revenue Code, not to be considered based to any extent on a consideration in money or money's worth. The Supreme Court, in *Merrill* v. *Fahs*, 324 U. S. 308, and *Commissioner* v. *Wemyss*, 324 U. S. 303, laid down the rule that the estate tax and the gift tax are in *pari materia* and to be construed together; also that the law of gift tax is aimed to reach transfers which are drawn from the donor's estate. Both of these cases, it is true, involved prenuptial transfers, but, in my opinion, there is no difference whatever between such transfers and those made between husband and wife, of property for relinquishment of marital rights, after marriage. The majority view here is essentially based on the idea that if a husband and wife are estranged they so deal at "arm's length"; that there is full and adequate consideration in money or its worth within the statute. Though, romantically speaking, the parties in the *Wemyss* and *Merrill* v. *Fahs* cases might be thought not to have dealt at "arm's length" during their courtship, in any real business sense the transfers in those cases were as much at arm's length as in the instant case. In the *Wemyss* case the wife-to-be required her future husband to make a transfer to her to make up for income which she would lose from another source, marriage obviously being dependent on such an arrangement. In *Merrill* v. *Fahs*, *supra*, the husband-to-be made the transfer to his wife-to-be in order to secure from her a release of marital rights which otherwise she would have had after marriage. Can there be any question that these transfers were not actuated by the ordinary donative intent existing between sweethearts? Is there any possible difference between the consideration actuating the release of marital rights in *Merrill* v. *Fahs* before marriage and release of marital rights after marriage, in consideration of a property transfer just as in *Merrill* v. *Fahs?* In the two cited cases it is obvious, I think, that ordinary donative intent, such as is commonly evidenced in presents between sweethearts, was altogether absent and that cold business motives actuated the transfers, yet the Supreme Court said that within the intent of the gift tax law there were gifts, despite such lack of ordinary donative intent. In *Commissioner* v. *Greene*, 119 Fed. (2d) 383, it was held that donative intent was unnecessary to the gift tax, that state law (which means ordinary concepts of consideration) did not govern, and even that a state court decision did not control. The same court, in *Giannini* v. *Commissioner*, 148 Fed. (2d) 285, again stated that the "existence of legal consideration according to local

law is immaterial under the tax laws involved herein"—the Federal gift tax. In my view, these cases are controlling and there was gift for that additional reason. Cases such as *Commissioner* v. *Converse*, 163 Fed. (2d) 131; *Clarence B. Mitchell*, 6 T. C. 159; *Herbert Jones*, 1 T. C. 1207, involving release of rights of support and maintenance, should not be followed, as here, to the extent of holding, contrary to the statutes as to both estate and gift tax and the above pronouncements of the Supreme Court, that transfers of property for release of marital rights rest on full and adequate consideration in money or money's worth and are, therefore, not gifts. Other cases followed by the majority, founded thereon and to any extent involving property as well as support rights, are, in my view, not sound basis for the conclusion reached.

Moreover, the divorce decree here merely adopted the agreement of the parties and did not, as in *Estate of Josephine S. Barnard*, 9 T. C. 61, adjudicate the agreement to be "fair, just and equitable" and, in my opinion, is a consent judgment adding nothing to the force of the agreement previously made. We said in *Roland M. Hooker*, 10 T. C. 388, in effect, that we disagree with any idea that payment in liquidation of a judgment is necessarily a taxable gift within section 1002. The thought is obviously valid as against agreed judgment. *Freuler* v. *Helvering*, 291 U. S. 35. Believing that the mere idea of an "arm's length" transaction between husband and wife, such as here involved, is fully covered by the *Wemyss* and *Merrill* v. *Fahs* cases and does not demonstrate the consideration required by section 1002, but, on the contrary, under section 812 (b) is not the requisite consideration, and that the judgment is not of the character which should be recognized as diminishing the donor's estate, I respectfully dissent.

TURNER *J.*, agrees with this dissent.