NORMAN TAUROG, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11429. Promulgated December 14, 1948.

*J. Everett Blum, Esq.*, for the petitioner.
*A. J. Hurley, Esq.*, for the respondent.

## OPINION.

BLACK, *Judge*: The Commissioner, in support of his determination that petitioner made a gift of $118,181.52 to his wife when in 1943 he agreed to an equal division of community property with her, attendant upon their divorce, relies upon section 1000 (d) and section 1002 of the Internal Revenue Code, which are printed in the margin.[1]

Petitioner denies that he made any gift of property to his wife or had any intention of doing so. He contends that what he did

---

[1] SEC. 1000. IMPOSITION OF TAX.

    &ast;          &ast;          &ast;          &ast;          &ast;          &ast;          &ast;

   (d) [As added by section 453 of the Revenue Act of 1942, effective as of January 1, 1943.] COMMUNITY PROPERTY.—All gifts of property held as community property under the law of any State, Territory, or possession of the United States, or any foreign country shall be considered to be the gifts of the husband except that gifts of such property as may be shown to have been received as compensation for personal services actually rendered by

do was to consent to a division of community property with her which had been arrived at after considerable negotiations conducted by the attorneys on both sides and that these negotiations at all times were at arm's length. Furthermore, petitioner contends that, when the instrument making the division of property was signed by the parties it was agreed between them that there was to be no delivery to either party until the divorce decree was obtained and that the agreement was to be made a part of the divorce decree, that it was so made, that in carrying out the division of property provided therein petitioner was discharging an obligation imposed upon him by the Nevada court, and that under such circumstances there was no taxable gift. Among the cases which petitioner cites in support of his contention are *Herbert Jones*, 1 T. C. 1207 (appeal dismissed, CCA–7, May 1, 1944) ; *Edmund C. Converse*, 5 T. C. 1014; affd., 163 Fed. (2d) 131; *Clarence B. Mitchell*, 6 T. C. 159 (appeal dismissed CCA–7, Oct. 7, 1946) ; and *Albert V. Moore*, 10 T. C. 393.

Respondent relies principally on the Supreme Court's decisions in *Commissioner* v. *Wemyss*, 324 U. S. 303, and *Merrill* v. *Fahs*, 324 U. S. 308. He states that his position is set forth in E. T. 19, 1946–2 C. B. 4, as follows:

> With respect to transfers made pursuant to legal separation agreements or divorce decrees, it is the position of the Bureau that, for both estate and gift tax purposes, a release of support rights may constitute a consideration in money or money's worth. Accordingly, to the extent that a transfer does not exceed the reasonable value of the support rights of the wife it is to be treated as made for an adequate and full consideration in money or money's worth. The question whether the transfer is in excess of reasonable support rights is for the determination of the Bureau. That portion of any transfer which is allocable to the release by the wife of her property or inheritance rights is to be considered as not made "to any extent" for an adequate and full consideration in money or money's worth.

In the recent case of *Edward B. McLean*, 11 T. C. 543, we discussed E. T. 19 and, among other things, said:

> \* \* \* For reasons not clear to us E. T. 19 excepts support and maintenance from marital rights, the release of which does not constitute full and adequate consideration. We deem the ruling invalid in so far as it does not also except transfers made to settle presently enforceable claims.

See also the discussion of E. T. 19 in the Second Circuit's opinion in *Commissioner* v. *Converse, supra.*

---

the wife or derived originally from such compensation or from separate property of the wife shall be considered to be gifts of the wife.

SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

In *Edmund C. Converse, supra,* we distinguished that case from the Supreme Court's decisions in *Commissioner* v. *Wemyss, supra,* and *Merrill* v. *Fahs, supra,* and in doing so we said:

\* \* \* The Commissioner does not contend that the *Jones* case is distinguishable from the present case, but argues that it is no longer the law, since the error therein was pointed out by the subsequent decisions of the Supreme Court in *Commissioner* v. *Wemyss,* 324 U. S. 303, and *Merrill* v. *Fahs,* 324 U. S. 308. This Court, in the *Wemyss* case, pointed out the difference between that case and the *Jones* case. The two Supreme Court cases just mentioned, as well as the *Bristol* case, all dealt with antenuptial agreements. The Supreme Court did not deal with the question which was in the *Jones* case and did not indicate its views on that question. We follow the *Jones* case and hold that the Commissioner erred by increasing the petitioner's taxable gifts for 1941 by the amount of $625,000 which he paid to his wife. Cf. *Commissioner* v. *Mesta,* 123 Fed. (2d) 986; certiorari denied, 316 U. S. 695; rehearing denied, 317 U. S. 704.

The Second Circuit, in affirming us in the *Converse* case, stated that it found it unnecessary to resolve the question "as to any distinction between antenuptial and postnuptial agreements under the doctrine of the *Wemyss* and *Merrill* cases." The court thereupon based its decision squarely upon the proposition that the amount which the taxpayer in that case paid to his divorced wife was paid to her in pursuance of the judgment of a court of competent jurisdiction and therefore was in discharge of an obligation "and the discharge thereby of the respondent's obligation to pay that debt was an adequate and full consideration in money or money's worth for the transfer."

It would be unreasonable, we think, to say, where, as here, a husband and wife had come to the parting of the ways and had separated and after prolonged negotiations had arrived at a property division in which the wife was to receive one-half of the community property, which property she was entitled to receive under the laws of California and which division of property was to be embodied in the divorce decree and was in fact made a part of the decree, that the husband was thereby making a gift to his wife of the property which was transferred to her. We, therefore, hold, on the strength of the authorities cited above, that the division of community property which took place between petitioner and his wife in an arm's length agreement which was made a part of the divorce decree, was made pursuant to and in discharge of an obligation imposed by the judgment of divorce and was for an adequate and full consideration in money or money's worth and, therefore, was not a gift.

Reviewed by the Court.

> *Decision will be entered for the petitioner.*

HILL, *J.,* concurs only in the result.

DISNEY, *J.*, dissenting: The question here is whether the division of community property between husband and wife, agreed upon and made in writing by them and adopted by a divorce decree, constituted a gift from the husband to wife.

Section 1002 of the Internal Revenue Code, a part of the law of gift tax, provides that there is gift to the extent that property is transferred for less than adequate and full consideration in money or money's worth. Thus, it is seen that the criterion is not mere consideration, the common law test of gift, but that, as stated by the Supreme Court in *Commissioner* v. *Wemyss*, 324 U. S. 303:

 * * * Congress intended to use the term "gifts" in its broadest and most comprehensive sense. * * * For purposes of the gift tax it not only dispensed with the test of "donative intent". It formulated a much more workable external test, that where "property is transferred for less than an adequate and full consideration in money or money's worth," the excess in such money value "shall, for the purpose of the tax imposed by this title, be deemed a gift * * *." And Treasury Regulations have emphasized that common law considerations were not embodied in the gift tax.

The Court states also: "The section taxing as gifts transfers that are not made for 'adequate and full [money] consideration' aims to reach those transfers which are withdrawn from the donor's estate." In *Merrill* v. *Fahs*, 324 U. S. 308, that Court in addition expressed, from *Estate of Sanford* v. *Commissioner*, 308 U. S. 39, the rule that: "The gift tax was supplementary to the estate tax. The two are in *pari materia* and must be construed together." The petitioner on brief so concedes. He also agrees that the primary purpose of the gift tax "is to tax *inter vivos* transfers which deplete the estate that the donor would otherwise leave at death."

Section 1000 (d) of the code provides in substance that gifts of community property shall be considered gifts of the husband (with exception not here applicable). The petitioner's argument, sustained by the majority opinion, is in effect that donative intent is necessary to gift; that here it was absent because the transfer was an arm's length transaction and made pursuant to judgment of the Nevada divorce court, which divorce decree was a debt enforceable against the petitioner and deductible as a claim against estate at his death, so that the transfer to the wife by the husband, of community interest, in the division made, therefore is based upon full and adequate consideration in money's worth, within the requirements of the *Wemyss* case as to transfers withdrawn from the donor's estate.

The majority opinion relies primarily upon *Herbert Jones*, 1 T. C. 1207; *Edmund C. Converse*, 5 T. C. 1014; affd., 163 Fed. (2d) 131; *Clarence B. Mitchell*, 6 T. C. 159, and *Albert V. Moore*, 10 T. C. 393, to demonstrate arm's length transaction, and also to show a decree as consideration for the transfer to the wife and to distinguish this situation from the prenuptial contracts involved in the *Wemyss* and

*Merrill* v. *Fahs* cases. Upon examination of the cases relied upon, I find that in general they involved money judgments for support or maintenance of the wife. The *Jones* case, holding that there was no gift (in addition to being decided prior to the *Wemyss* and *Merrill* v. *Fahs* opinions), stresses the fact that the judgment against the husband was one for the wife's support, and that no property rights were involved. The *Converse* case, following the *Jones* case and pointing out that the Supreme Court cases above cited dealt with antenuptial agreements, involved a money judgment for $625,000 in lieu of monthly payments of $1,250, provided for the wife's support in a previous agreement.

On appeal the Circuit Court relied for affirmance upon the fact that there was "liquidated debt created by the judgment," also "discharge of a money judgment," and "a transfer which discharged that debt," and pointed out particularly that the judgment was not based upon the previous agreement, but upon evidence and an agreement during the trial, and that the previous agreement was disregarded by the Circuit Court. Though in the *Converse* case, as pointed out by the majority, we recited: "This Court, in the *Wemyss* case, pointed out the difference between that case and the *Jones* case," reference to the *Wemyss* case, 2 T. C. 876, reveals that no difference between the *Jones* and *Wemyss* cases was there pointed out, and that, indeed, the *Jones* case was mentioned only as a parenthetical reference in discussing the *Bristol* case, 42 B. T. A. 263. So infirm is the foundation for the majority view here! In *Clarence B. Mitchell*, 6 T. C. 159, the transfers were made by the husband to the wife pursuant to a settlement agreement merged into a divorce decree "in order to obtain the discharge of his obligation to support her," and we held that he "received a thing of real and substantial value when by reason of the transfers in question he was relieved of any further legal obligation to support his wife * * *." It seems plain that property transferred in discharge of a money judgment constitutes full and adequate consideration within the statutory intent. Here, however, there is only the matter of community property divided, by an agreement and instrument of conveyance adopted by the judgment of divorce. The element of support does not enter, for it was separately taken care of by the provision of paragraph 7 of the agreement for payment to the wife of $24,000 for the first year and $20,000 per annum thereafter (with exception not here of interest) "as and for her future support and maintenance," and with provision for proportionate increase or decrease as his net income compared with that for 1942, or was affected by changes in Federal income tax,[1] while the husband and wife, in

---

[1] These provisions show that there is only a very qualified release of the husband's duty to support, in this case. In substance, the husband was to continue support of the wife according to his ability; and the division of community property could not be consideration for release of that duty.

other paragraphs, each respectively thereby transfers to the other his or her interest in the community property. The property the division of which here concerns us was no part of the subject matter of the agreement, or judgment, for support or maintenance.

*Albert V. Moore, supra,* does not involve community property, and therein the money involved was paid by the husband for transfer to him of certain real estate which she alone owned, and certain counsel fees. Also, both property and rights to support were involved and in-surance policies conveyed by him, and on which he was to pay the premiums during his life, were obviously a matter of support.

Though we have distinguished the *Wemyss* and *Merrill* v. *Fahs* cases, we have not done so in any cited case where only transfer of property, as contrasted with settlement of alimony or support rights, was involved, and in *Roland M. Hooker,* 10 T. C. 388, we were careful to limit the *Converse* case to its facts and to deny that the mere fact of judgment settles the consideration question.

So far as involves the idea that lack of donative intent is evidenced by an arm's length transaction, the majority, in my view, disregards *Commissioner* v. *Greene,* 119 Fed. (2d) 383, holding donative intent unnecessary to gift tax, and relies too much upon ordinary ideas of donative intent and cases prior to the *Wemyss* and *Merrill* v. *Fahs* cases, and does not take into consideration Regulations 108, section 86.2 (c) [2] or give weight to E. T. 19, I. R. B. 1946–2, p. 166, issued in August 1946.[3] The petitioner does not attack that regulation as invalid or going beyond the statute.

---

[2] Sec. 86.2 (c). *Transfers of community property after 1942.*—During the calendar year 1943 and any calendar year thereafter any gift of property held as community property under the law of any State, Territory, or possession of the United States, or any foreign country constitutes a gift of the husband for the purpose of the gift tax statute (regardless of whether under the terms of the transfer the husband alone or the wife alone is designated as the donor or whether both are so designated as donors), except to the extent that such property is shown (1) to have been received as compensation for personal services actually rendered by the wife or derived originally from such compensation, or (2) to have been derived originally from separate property of the wife. The entire property comprising the gift is prima facie a gift of the husband, but any portion thereof which is shown to be economically attributable to the wife as prescribed in the preceding sentence constitutes a gift to the wife.

The rule stated in the preceding paragraph applies alike to a transfer by way of gift of community property to a third party or third parties, to a division of such community property between husband and wife into the separate property of each, and to a transfer by the husband and wife of any part of such community property into the separate property either of the husband or of the wife, or into a joint estate or tenancy by the entirety of both spouses. In all of such cases the value of the property so transferred or so divided, as the case may be, is a gift by the husband to the extent that it exceeds the aggregate amount of the value of that portion which is shown to be economically attributable to the wife, as prescribed in the preceding paragraph, and of the value of the husband's interest in such property after such transfer or division. * * *

[3] REGULATIONS 108, SECTION 86.8; Transfers for a consideration in money or money's worth. (Also Section 812 (b).)

1946–16–12367
E. T. 19

Transfers of property pursuant to an agreement incident to divorce or legal separation are not made for an adequate and full consideration in money or money's worth to the extent that they are made in consideration of a relinquishment or promised relinquishment

It is apparent that if we apply the rationale of the *Wemyss* and *Merrill* v. *Fahs* cases the donative intent is to be viewed in no ordinary common law sense, but it is to be tested by the effect in reduction of donor's estate. In my view, the arm's length idea can not be permitted to override the positive provision of section 1002 of the Internal Revenue Code that for gift tax purposes the consideration must be adequate, full, and in money or its worth, where community property is divided, as here. We can not conform to the broad pronouncement of the Supreme Court that the gift tax statute, as to consideration "aims to reach those transfers which are withdrawn from the donor's estate," and that gift and estate tax laws, in this respect, are directed to the same purpose, not to be separated in application, and at the same time hold that the mere fact that the transaction is arm's length satisfies the statute in this matter of community property where we have said, in *Estate of Edwin W. Rickenberg*, 11 T. C. 1, that division thereof does not constitute consideration excepting the transfer from inclusion in gross estate. It is to be noted that the expression "arm's length" is found in Regulations 108, section 86.8, a general regulation as to transfer, yet that section 86.2 (c), another regulation, more specific and especially dealing with community property, says that there is gift by the husband in the division of community property. Ordinary rules of interpretation require that the more specific provision should outweigh the more general. Moreover, E. T. 19, promulgated in conformity with the *Wemyss* and *Merrill* v. *Fahs* cases, recognizes that release of rights to support is sufficient consideration, in both estate and gift tax cases, but that on the contrary transfer of property rights "is to be considered as not made 'to any extent' for an adequate and full consideration in money or money's worth." Clear it is that the respondent is not, as the majority opinion seems to infer, committed, in the matter of gift tax, to any view that such consideration is found merely because of an arm's length transaction. I am completely unable to discern a difference between agreements between spouses-to-be in the *Wemyss* and *Merrill* v. *Fahs* cases, and between spouses in this case. All are equally at arm's length. Though as stated in my dissent in *Edward B. McLean*, 11 T. C. 543, sweethearts may, romantically speaking, be thought not to deal "at arm's length," in any realistic business sense the transfers between them in the *Wemyss* and *Merrill* v. *Fahs* cases were not only just as arm's length as the transfer here involved or involved in the cases relied upon by the majority, but it is clear that such prenuptial arrangements were precisely the antithesis of gifts in the ordinary sense.

---

of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or other marital rights in the transferor's property or estate; to the extent that the transfers are made in satisfaction of support rights the transfers are held to be for an adequate and full consideration. The value of relinquished support rights shall be ascertained on the basis of the facts and circumstances of each individual case.

Sweethearts wishing to make gifts do not coldly require *quid pro quo*, such as property or release of marital rights, as in those cases required. Yet the Supreme Court held that, despite lack of ordinary donative intent, under Federal law they were gifts. Therefore, similar contractual arrangements between husband and wife can not logically be differently classed, merely because of some idea of "arm's length" plainly equally present in the transactions in the cases last named.

I note, too, that section 86.6 speaks of arm's length transactions with reference to transfers "made in the ordinary course of business." In my opinion this division of community property was not made in the ordinary course of business within the intent of the regulation. Nothing indicates that division of community property was intended to be covered; to the contrary is the fact that section 86.2 (c) specifically covers it. Moreover, the mere fact that there was adverse and bitter feeling between the parties in the matter of the divorce does not demonstrate that, in the division of the community property, they dealt at arm's length. The evidence is affirmative that under the advice of counsel they were agreed that a California court would divide the property equally. Obviously, neither had any hope of getting more, nor fear of getting less, than one-half. The division was by agreement as fully as if there was no divorce in the offing. There was, as to community property, no such haggling as would be the essence of the arm's length transaction meant by the regulation. They merely divided the property by agreement, equally, because they thought they must. Assuming that there was, in such mutuality, some consideration under common law doctrine, it is not, under the statute, sufficient; and to hold that the animosity between the parties makes an arm's length transaction effective under the regulation to override the statute would be to say that some consideration is full and adequate in money or money's worth. Regulations 108, section 86.8, should not here be given the effect desired by the petitioner and given effect by the majority.

Moreover, even if it is assumed that, in general, a divorce judgment ordering transfer of property constitutes such a debt as is a claim against estate (and therefore under petitioner's argument meets the test of the *Wemyss* and *Merrill* v. *Fahs* cases), there is error in not recognizing that under section 812 (b), Internal Revenue Code, a claim against an estate must conform to estate tax law, *Commissioner* v. *Porter*, 92 Fed. (2d) 426; and, therefore, must be examined as to its foundation, and any promise or agreement upon which it is based must have full and adequate consideration in money or its worth; and that division of community property does not furnish it. I am fully cognizant that such cases as *Edythe C. Young, Executrix*, 39 B. T. A. 230, and *Estate of Silas B. Mason*, 43 B. T. A. 813, (both involving alimony and emphasizing that a wife's right to support

grows out of the husband's legal duty, not from promise or agreement) are to the effect that such a divorce decree, rather than previous agreement, is the foundation for the claim against estate and, therefore, there is, in such circumstances, no requirement of full and adequate consideration under section 812 (b). But no case cited to that general import involves mere division of property, especially community property, as here. I, therefore, examine the facts to find whether the conveyance here was "founded on promise or agreement" or upon judgment, and so whether the consideration requirements of section 812 (b) are applicable. Scrutiny of the instrument signed about August 15–20, 1943, though dated October 5, 1943, reveals that each of the parties did not merely promise and agree to deliver property according to a divorce decree, but actually by that instrument conveyed such property, i. e., divided the community property; for "The Husband hereby sells, assigns, grants, transfers and conveys to the Wife, as her separate property, all his right, title and interest in and to all items of said community property * * *," with the conveyance by the wife reading the same, while in other paragraphs each "hereby relinquishes, releases and quitclaims" all his (her) "right, title and interest in and to any property" of the other. "This agreement * * * shall constitute a final settlement, adjustment and division of the property and financial matters of said parties." Had this instrument been delivered when signed, there could be no doubt that the conveyance was founded on promise or agreement, within the language of section 812 (b), and not the later divorce decree. What then of the fact that it was agreed orally that the instrument would be delivered "on the day that the decree was rendered" or "not to be delivered * * * until the divorce was obtained" (in the varying language of the testimony.[4] The instrument is silent on that point.), and that it was delivered on the day of divorce? Here it is necessary to examine the precise provisions of the instrument. It provides that the parties desire to settle property rights "by agreement and without resort to any court for that purpose." The only mention of divorce or decree is in paragraph 16, where it is provided that, *in the event* that the bonds of matrimony then existing "shall be dissolved and a decree of divorce granted * * *," each releases right to alimony or support and maintenance (except as provided) and "Such decree of divorce, if any, may incorporate the agreement or any decree or court order based thereon, as a part thereof." Thus, it is seen that immediately upon the granting of "any" divorce, and without respect to its terms, the mutual conveyances of property became effective;[5] and that there was no provision, in the instrument

[4] In *Estate of Josephine S. Barnard*, 9 T. C. 61, we held there was gift when the agreement had been to transfer "$50,000 when and if" the divorce was granted.

[5] The instrument contains other expressions of present relinquishment and transfer, as to insurance policies and debts.

or orally, that it and the mutual conveyances therein made would be effective *only if the court so decreed.* Even had the decree been silent on the matter of the agreement or property, the conveyance recited in the instrument would nevertheless have been binding on each party from the moment of divorce. At the instant of divorce neither party needed any further instrument of conveyance, for that signed about August 15–20 was a conveyance, upon divorce. The record indeed indicates no later instruments of conveyance after the decree. How then may it validly be argued that the conveyance by the husband, so set forth in the instrument previously signed, deliverable upon any divorce, and delivered immediately after divorce, is "founded" upon the provisions of the judgment and not upon the instrument already executed? In his gift tax return the petitioner relied, to negative donative intent, not on transfer under judgment, but on "a property settlement * * * *by which* a division of their community property was made," (italics added) and on the fact that the "division * * * resulted from the separation of the parties which terminated in divorce." This is no case where a divorce decree alone could be or was relied upon for enforcement of an executory agreement. This was an instrument of conveyance executed and enforceable from the moment of divorce and, so far as the instrument of conveyance was concerned, it seems to me impossible to say that the conveyance to the wife of community property is, founded upon provisions of a decree of divorce which were in no degree necessary thereto, as against actual previous conveyance. They were "mutually desirous" of settling their property matters "without resort to any court for that purpose." By the latter expression it is made clear that the conveyances recited were made independently of the court, or the content of its decree, so far as property was concerned. Nor does the decree in logic add anything to the conveyance made. After dissolving the bonds of matrimony, the decree adds that all property matters are "hereby settled in accordance with the terms and provisions" of the instrument dated October 5, 1943, copy of which, in evidence, is "expressly referred to and made a part hereof," also "approved and adopted in full by the court" and "merged into and made a part of this decree by reference as completely as if set forth in full. The plaintiff and defendant are ordered and required to perform all of the *obligations of said agreement*" (not of the decree). (Italics supplied.) There is no adjudication of respective rights or contentions as to such property, no order as to what division is by the court found just or proper, but mere adoption of agreement made. Indeed, it is apparent that the parties intentionally refrained from submitting to the court any contention as to property. They were desirous of settling their property rights "*without* resort to any court for that purpose." (Italics added.) In the matter of taxes, is the

instrument nevertheless to be considered judgment of court rather than an agreement and conveyance merely because it is, as such, adopted by the court (without any determination as to its fairness or justice)? *Freuler* v. *Helvering*, 291 U. S. 35, founds a line of authority that judgments by consent will not be allowed to determine tax consequences. Can anything else be discerned in the above recitations from the decree? There is much reading on the subject of realism in taxes. It would be altogether unrealistic to view this decree as to property as anything but the consent decree mentioned in the *Freuler* case, or to regard the conveyances set forth in the instrument as in truth founded, within the text of section 812 (b) of the code, on the decree or anything but the agreement and conveyance so expressly therein adopted and relied upon.

The substance is seen through transparent form. Assuming that the court could have decreed otherwise as to the property, this does not prevail over the fact that in this case it affirmatively appears that the court entered purely a consent judgment. (In fact, the petitioner appears to argue that a court of California, the situs of the community property, would have recognized only an equal division, so that it appears that the Nevada divorce court, in petitioner's view, was in reality without power except to follow the agreement for equal division. We said in *Roland M. Hooker*, *supra*, that we can not agree that no payment in liquidation of a judgment is a taxable gift within section 1002, and that Congress may not be supposed to pass a law which could be circumvented by the clear process of entering into an agreement to make transfer, supported by inadequate money consideration, and then making the transfer to satisfy a judgment on the agreement. The petitioner here, in substance, argues successfully for precisely that effect. I conclude that the conveyance of community property by the petitioner to his wife was "founded upon a promise or agreement" within the language and intent of section 812 (b), and, therefore, that the claim against the petitioner's estate, which he contends belonged to his wife and which he says he satisfied by the transfer, must be shown to have been contracted for adequate and full consideration in money or money's worth, and that the mere fact of the judgment, relied upon herein to prove the claim against estate, so as to negative donative intent, is not sufficient; and since in *Estate of Edwin W. Rickenberg*, *supra*, we have held that division of California community property is relinquishment of marital rights in the decedent's property within the language of section 812 (b), and so not to be considered to any extent a consideration in money or money's worth, it follows that there is here no showing of the consideration necessary to negative gift under section 1002 of the code, and that under section 1000 (d) there was gift by the petitioner as husband.

I would not adhere to the ideas expressed in the *Jones* case, prior to the *Wemyss* and *Merrill* v. *Fahs* opinions by the Supreme Court, nor extend such ideas to cover community property settlements, not money judgments for support; but would hold that the transfer by division of community property to petitioner's wife was gift by the petitioner. I therefore dissent.