The Chase National Bank of the City of New York, Trustee and Transferee of Bruno Reinicke v. Commissioner. Bruno Reinicke, formerly Bruno Reinicke, Jr. v. Commissioner.
Chase Nat'l Bank of New York v. Commissioner
Docket Nos. 31127, 31456.
United States Tax Court
1953 Tax Ct. Memo LEXIS 275; 12 T.C.M. (CCH) 455; T.C.M. (RIA) 53148; April 28, 1953
*275 Applying the rationale of Harris v. Commissioner, 340 U.S. 106 and Catherine S. Beveridge, 10 T.C. 915, the compromise agreement between petitioner Reinicke and other interested parties by which was settled in 1941 certain litigation appertaining to a trust created by Reinicke in 1928 held not to have effected a taxable gift of property consisting of the corpus of such trust upon the approval March 7, 1941, of such compromise by decree of the Newyork Supreme Court. Thomas A. Ryan, Esq., 37 Wall Street, New York, N. Y., for the petitioners. Ellyne E. Strickland, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion Respondent determined a deficiency in the gift tax of petitioner, Bruno Reinicke, for the year 1941 in the amount of $23,500.22, which deficiency *276 was determined for assessment against petitioner, The Chase National Bank of the City of New York as trustee and transferee of the property of Bruno Reinicke. Such determination of transferee liability has not been assigned as error and is not contested herein. The sole question presented is whether petitioner Bruno Reinicke, the creator of a trust dated March 21, 1938, effected a gift of property constituting the corpus thereof on March 7, 1941, at which time the Supreme Court of the State and County of New York approved a compromise settlement of certain litigation appertaining thereto to which settlement he was a party. Findings of Fact Most of the facts have been stipulated and are so found as part hereof. The petitioner in Docket No. 31127, The Chase National Bank of the City of New York (hereinafter referred to as the Bank), is a national banking association organized and existing under the laws of the United States of America, having its principal office in the City, County and State of New York. The bank is the trustee of a certain Indenture of Trust dated the 21st day of March 1928, made by it with Charles L. Cobb, who was the nominee of Bruno Reinicke, then Bruno Reinecke, *277 Jr. The Bank, as trustee under such Trust Indenture, filed a "Donee's or Trustee's Information Return of Gifts" for the calendar year 1941. This return was filed on March 16, 1942, in the office of the collector of internal revenue, second district, New York. The petitioner in Docket No. 31456, Bruno Reinicke, formerly Bruno Reinicke, Jr., is a resident of Hanover, British Zone, Germany. A gift tax return for the calendar year 1941 was filed by Reinicke on March 24, 1949, in the office of the collector of internal revenue, second district of New York. The filing thereof was timely, the time to make such return and the payment of any tax due thereon having been extended to April 1, 1949 by the Commissioner of Internal Revenue pursuant to the authority conferred upon him by Section 3804 of the Internal Revenue Code, as amended; and subpart J of Treasury Decision 5279, as amended, by Treasury Decision 5610. On or about March 21, 1928, one Charles L. Cobb, a lawyer, acting as nominee for and on behalf of Reinecke, executed and delivered to the Bank an Indenture of Trust transferring certain properties to be held in trust for benefit of Reinicke; his wife, Elisabeth; *278 his two sons Bruno Carl and Robert Hans; and any other children that might thereafter be born unto Reinicke of his then marriage or of any subsequent marriage. The Trust Indenture provided, inter alia, that: "1. During the lives of Bruno Reinicke, Jr., and Elisabeth Reinicke, his wife, and the life of the survivor of them, and for such further time or times as is hereinafter provided, the trustee shall hold, manage, care for and protect said trust estate and collect the income therefrom, but subject, however, to all of the terms and conditions herein provided. "2. From the principal of this trust estate, the trustee shall make such loans to such beneficiaries hereof, in such amounts, for such security, if any, and upon such terms and conditions, as Bruno Reinicke, Jr., may direct. "3. The trustee shall make such loans of money to Bruno Reinicke, Jr., from the principal of said estate, in such amounts, at such times, and for such security, if any, and on such terms and conditions as Bruno Reinicke, Jr., may direct, provided that the total of any loan or loans to Bruno Reinicke, Jr., outstanding at any one time, shall not exceed eighty per cent (80%) of the principal of the trust *279 estate at such time. "4. After the payment of all expenses, charges, fees, taxes and other governmental charges, the trustee shall, at the end of each quarter year, add the net income to the principal of the trust estate unless Bruno Reinicke, Jr., shall, during that quarter, direct the trustee to pay said net income, or some part thereof, to any one or all of his children or to Bruno Reinicke, Jr., or any person or persons that he may direct, for the benefit of said child or children, and the trustee shall in that event make such payments in accordance with such directions; provided, however, that if Bruno Reinicke, Jr., shall notify the trustee in writing that he has returned to the United States of America and intends to become a resident thereof, he may thereafter direct the trustee to pay to him personally not to exceed one-half of said net income, and upon receiving said instructions the trustee shall make said payment or payments to Bruno Reinicke, Jr., in accordance with said instructions. "If Bruno Reinicke, Jr., shall desire to use any part or all of said net income for the support, maintenance, education and travel of any or all of his children, then he may direct the *280 trustee to pay to him or to any one else the said net income, or any part thereof, to be used as he deems best for any of his children and he shall direct the trustee how much of said net income shall be paid to him or to any one else for such purposes and the trustee shall charge said payments to the beneficiary or beneficiaries hereof in accordance with instructions given by said Bruno Reinicke, Jr. The receipts given said trustee by said Bruno Reinicke, Jr., or by parties designated by him, for all payments out of income of said trust estate shall fully discharge and release said trustee on account thereof." * * *
Upon the death of the survivor of Reinicke and his wife, the trustee was to divide the trust estate into as many equal parts as there were surviving children or issue of deceased children (per stirpes) and was to hold such part for each. For the two children already born, the income was to be paid to each child until it attained the age of 21 years, at which time one-fourth of the principal was to be paid to him; thereafter another fourth was to be paid to him every five years until he attained the age of 36 years, the income from the balance to be paid to him *281 in the meantime. As to children unborn at the date of the trust, but living at the death of the survivor of their parents, if they were 21 years of age or over, the whole principal was to be paid to them, otherwise, the income was to be paid to them until they reached that age. Children of deceased children of Reinicke and his wife, living at the death of the survivor of the latter two persons, were to get an immediate distribution of their parents' share per stirpes. If any child died before getting his full distribution share, his issue was to receive the same per stirpes; and if none, such share was to be divided among the remaining children. If there were no survivors at all of Reinicke and his wife, or they all died during the existence of the trust, as above provided, the trust was to be distributed to nephews and nieces of Reinicke. Payments could be made to the children above specified, from the principal, in an unusual emergency, after the death of Bruno Reinicke and his wife. The general powers of the trustee were set forth, it being provided that upon the request of Reinicke, the trustee was to execute proxies giving him or his designee full power to vote the *282 capital stock belonging to the trust; and the trustee was not to exercise any of the powers mentioned without first securing the approval of Reinicke during his life, and after his death, that of his wife. The trustee was to be guided by the wishes of Reinicke in all matters of trust policy during his life and after his death by those of his wife. The trustee was to render annual accounts of the trust to Reinicke during his life and after his death, to his wife. The payments of principal and income to the beneficiaries were to be inalienable while in the hands of the trustee. During his lifetime, Reinicke, and after his death, his wife, was to have the power to direct postponement or advancement of the time of distribution of any shares to the beneficiaries within the limitations of the law. The trust's credit could be used for loans when so directed by Reinicke to purchase additional securities or property for the trust. After Reinicke's death, his wife was to exercise all the rights of power above reserved to him but not for the benefit of any children born as a result of any subsequent marriage by her. The laws of Illinois and of the United States were to control the trust, *283 and section 23 of the Trust Indenture provided, in part, as follows: "23. Whereas this indenture is intended as a comprehensive plan for the management, control and disposition of the property, comprising the trust estate as a whole, it is hereby declared that in the event of a final adjudication of any court of competent jurisdiction in the United States of America that any provision herein made is invalid then this entire indenture of trust, together with all terms, conditions, provisions and disposition of the trust property shall be held and deemed null and void and of no effect whatsoever * * *." In such event, it was further provided that the trustee was then to transfer all the assets to Reinicke's nominee, Cobb. At some time following the creation of the trust, Reinicke and his family returned to Germany and became and are now residents thereof. Thereafter, a dispute arose between Reinicke and the Bank. On June 4, 1937, an action was begun in the Supreme Court of the County of New York, State of New York, entitled "The Chase National Bank of the City of New York, as Trustee under Indenture dated the 21st day of March, 1928, between Charles L. Cobb and The Chase National *284 Bank of the City of New York, Plaintiff, against Bruno Reinicke, Jr., Elisabeth Reinicke, * * * [and 19 other named persons,] * * * Defendants - Clerk's No. 14370 - Year 1937." The complaint filed therein asked for the settlement of the account of the Trustee-Bank, and for instructions and a determination of certain questions relating to the construction of the aforementioned Trust Indenture. Reinicke appeared by attorney in the action and filed answer wherein it was demanded, among other things, that the entire principal of the trust be paid over to him because of the alleged invalidity of the Trust Indenture. The litigation thus begun came on for trial and was duly referred to a Referee for hearing and determination of the issues raised by the pleadings. The Referee heard the proofs and allegations of the parties. His opinion was rendered and filed in the office of the Clerk of the County of New York on December 19, 1938. Therein, it was recited, in substance that the true settlor of the trust indenture of March 21, 1928, was Bruno Reinicke, Jr.; and that Charles L. Cobb, his attorney, had acted solely on Reinicke's behalf and had no interest in the trust. The paragraphs of the *285 trust pertinent to the litigation were recited as being paragraphs 2, 3, 4, 6, 17, 19, 21 and 23. It was also found therein that the trustee had received as income $167,933.74 from the trust up to the date of the Referee's report, which had been added to corpus under paragraph 4 of the trust; and that the trustee had made loans to Bruno Reinicke under the terms of the trust, including one for $25,000 on January 29, 1930, on which the interest since April 1, 1934 had been paid in German blockmarks which were on deposit in Germany under the control of the Foreign Exchange Control Board and had a greatly reduced value in the exchange rates. Further recitations and findings contained therein were, in summary, as follows: A dispute had arisen between the trustee and Reinicke because he, having returned to Germany prior to 1936, with his family, had in December, 1936, requested payment to himself of the entire amount of the income then on hand. The trustee had refused to comply on the ground that under the trust Reinicke was only entitled to receive income if he returned to the United States and intended to become a resident thereof. The trustee also refused to comply with a request dated *286 January 17, 1937, that it pay the income for the maintenance of Reinicke's children, and with one dated January 26, 1937, that the trustee pay 80 per cent of the trust to Reinicke. Instead, the trustee brought the present action for a construction of the trust, for instructions as to whether to comply with Reinicke's requests and for a determination of the validity of the trust with respect to the accumulation of income. In his answer, Reinicke alleged that the trust property was his; that it was his intention to reserve the right to borrow from the trust 80 per cent thereof, including accumulated income, any time he desired. He also alleged that under the laws of Illinois the accumulation of income was unlawful, and that under the provisions of the trust, such trust must therefore be terminated and the assets returned to Reinicke. A guardian ad litem for the infant defendants was appointed and appeared for them, the only other defendant appearing Reinicke. In his decision, the Referee held that the account of the trustee should be approved; that the trustee's refusal to make the loans was justified and proper, in view of the uncertainty of any repayment thereof by Reinicke under *287 then existing conditions in Germany and its duties as trustee under the circumstances, and that the trust as set up violated the laws of Illinois against unlawful accumulation of income, and the trust should therefore be terminated because of the express language in the trust to that effect. It was therefore decided that Reinicke was entitled to a decree that he was the true owner of the assets of trust, and that after a final accounting and payment of all expenses, the remainder should be returned to him. A judgment signed by the Referee was duly entered and filed in the office of the Clerk of the County of New York on February 17, 1939. Therein Reinicke was declared to be the true settlor of the trust in question with the sole right of reversion of the assets thereof. The Trust Indenture was declared to be in violation of the laws of Illinois in respect to the accumulation of income. Section 23 thereof was adjudged to be a valid exercise of the power of the settlor (Reinicke) in providing for the termination of the trust and its reversion to him should the provisions thereof be held invalid by a court of competent jurisdiction in the United States. It was further decreed that, *288 since the provisions of the Trust Indenture were invalid, the trust must terminate, and assets comprising it, less charges therein directed, revert and be paid to Reinicke. After compliance, the Bank was to be relieved of further liability thereunder. Upon advice of counsel, the Bank as trustee appealed on March 17, 1939, from so much of the above judgment as adjudged that Reinicke was entitled to the sole right of the reversion of the assets of the trust; that it violated the laws of Illinois; that Section 23 of the Trust Indenture was a valid exercise of the settlor's power in providing for the termination of the trust upon an adjudication by a court that the provisions of the trust were invalid; that the trust must terminate and Reinicke was entitled to the reversion of the assets comprising the trust, and must be paid the same; and also from the adjudication of fees to the Referee and to the guardian ad litem. Reinicke likewise appealed on March 20, 1939, from so much of the above judgment as adjudged that the account of the trustee should be judicially settled and approved; that the trustee was discharged from further liability in connection therewith; that it acted properly *289 in not complying with his request for a loan of 80 per cent of the principal and accumulated income; and from the adjudication of fees to the referee and to the guardian ad litem. He also appealed for failure of the above judgment to hold in accordance with certain German laws and from failing to make other findings of fact and conclusions of law. The infant defendants, through their guardian ad litem, appealed also on March 17, 1939, from the entire judgment on both questions of law and questions of fact. After these notices of appeal were filed, an agreement dated May 23, 1940 between all the parties to the litigation was entered into subject to the approval of the Supreme Court of the State of New York. This agreement recited the creation of the original trust of March 21, 1928; the above litigation and the judgment rendered thereunder; the appeal by the Chase National Bank, Bruno Reinicke and the guardian ad litem. It further recited that all parties were desirous that the controversy between them be adjusted and settled, and that the Indenture of March 21, 1928 remain in full force and effect, except as provided in the new agreement. It was then agreed that upon the approval *290 of the Supreme Court of New York of the new agreement, the parties would withdraw their appeal; that section 23 of the Trust Indenture was to be deleted and the trustee was to continue to operate under said trust as though that section had never been contained therein. The indebtedness of Bruno Reinicke to the trustee for loans to him from the trust estate totalling $25,000, plus interest, was to be deemed discharged, and $20,000 was to be paid from the principal of the trust to Reinicke's attorneys. Reinicke entered into the compromise agreement above summarized upon the advice of his American counsel, as well as his German counsel. He was advised by his American attorney that the judgment in the action had been appealed; that it was entirely possible that the judgment of the lower court would be reversed; and that the expenses of such litigation would be very great. Reinicke was informed that the cost of the litigation in the lower court amounted to $40,000 to $50,000. He feared that the second litigation resulting from the first appeal and an eventual third litigation resulting from a second appeal would be so costly that nothing much would be left. Reinicke's German attorney *291 advised him to accept the proposed settlement and told him that under the conditions a settlement in such form would be favorable. The German Devisenstelle (Foreign Exchange Control Office) advised that the compromise be made since by that time England had declared war against Germany and it was no longer possible to correspond with counsel in America. Reinicke and his German counsel had to act in accordance with instructions of the Devisenstelle. Both Reinicke and his German lawyer thought it impossible to carry on the litigation because of war conditions. Another reason that Reinicke had for settling the lawsuit was that by the time the question of settlement came up, the international situation between the United States and Germany was such that Reinicke considered war as possible; and felt that if he won the litigation and the war had already begun, the proceeds of the lawsuit would be seized by the United States Government; while, if he lost the litigation he would have a debt of between $50,000 and $100,000 payable in dollars which he would be unable to pay because under the laws of the German government no payment in dollars out of Germany was allowed. Reinicke considered *292 it to be to his best interests to accept the settlement suggested by his attorneys and agreed to by the attorneys for the bank. He considered the compromise economically advantageous to him and had no donative intent in making it. Reinicke was thereby relieved of the difficulties he had with the German authorities on account of the trust. Upon motion of the attorney for Reinicke, the Supreme Court of the State of New York issued an order dated March 7, 1941 amending the judgment of February 17, 1939, nunc pro tunc. Pursuant to such order, Reinicke was declared to be the true settlor of the Trust Indenture of March 21, 1928. The sole right of the reversion of the assets of the trust was decreed to be in Reinicke. The trustee's account, filed in the premises, was settled and allowed, and the trustee was discharged from any further liability with respect thereto. It was further adjudged that the trustee acted properly in not complying with Reinicke's request for a loan of 80 per cent of the principal and accumulated income of the trust fund as well as his request for the investment of $87,000 in German securities; that the trust violated the laws of Illinois with respect to the accumulation *293 of income; and that Reinicke was not guilty of laches. Certain expenses of the trust were approved and certain additional payments therefrom were authorized. Section 23 of the Trust Indenture was deleted, and the trust was directed to be continued as though such provision had never been contained therein. The indebtedness of Reinicke to the trust in the amount of $25,000 plus interest was cancelled. The trustee was released and discharged from any liability with respect to any matter embraced in the judgment or contained in its account, and was directed to continue to administer the trust in accordance with its terms, except for the deletion of Section 23 thereof. Certain payments to the guardian ad litem and to the Referee were authorized and approved. The principal of the trust on the 7th day of March, 1941, consisted of cash and securities as follows: Principal Account
Shares
Description
Value
100
Anaconda Copper Mining Co. Capital Par $50
$ 2,300.00
22
Electric Storage Battery Co. Common No Par
704.00
20
Geo. M. Forman & Co. 7% Cum. Pfd. "A" Par $100
2
Certificate of Beneficial Interest in Michigan Avenue and Eighth
Street Trust, Chicago, Illinois
16,607 1/2
Standard Brands Inc. Common No Par
99,645.00
100
Texas Corporation Capital Par $25
3,550.00
68
Union Carbide & Carbon Co. Capital No Par
4,258.50
Lots 9 and 10 in Block 2, Dingee and McDaniels re: subdivision
of Blocks 3, 6, 9, 10 and South 1/2 Block 8 in Wilmette Village,
Cook County, Illinois, legal title to which is held by the
Chicago Title & Trust Co., Chicago, Illinois, as Trustee
7,500.00
*294 Invested Income and Accumulated Income
Shares
Description
Value
100
Anaconda Copper Mining Co. Capital Par $50
$ 2,300.00
103
Borden Co. Capital Par $15
1,969.88
20
Continental Illinois National Bank & Trust Co. Chicago, Illinois,
Common Par $33 1/3
1,655.00
13
Chicago Corporation Common Par $1
11.38
10
First National Bank of Chicago, Chicago, Illinois,.Common
Par $100
2,720.00
10
Middle West Corporation Capital Par $5
50.00
100
Great Northern Railway Co. $6 Noncumulative Pfd. No. Par
2,325.00
200
Liggett & Myers Tobacco Co. Common Par $25
17,700.00
392 1/2
Standard Brands Inc. Common No Par
2,355.00
132
Union Carbide & Carbon Corporation Capital No Par
8,266.50
100
United States Steel Corporation Common No Par
5,800.00
Cash
46,315.35
Total
$209,425.61
Opinion VAN FOSSAN, Judge: The only question posed is whether, as held by respondent, the compromise agreement between Reinicke and the other interested parties by which was settled the litigation pending with respect to the trust created March 21, 1928, effected a taxable gift of property constituting the corpus thereof, upon the approval of the compromise *295 agreement by its inclusion in the decree of the New York Supreme Court on March 7, 1941. It is the position of the petitioners that the compromise of the lawsuit in question was an arm's length transaction without donative intent, for adequate consideration in money or money's worth; and that under the rationale of Catherine S. Beveridge, 10 T.C. 915 and Harris v. Commissioner, 340 U.S. 106 such compromise did not involve a taxable transfer within the meaning of the gift tax statute or the pertinent regulations. Respondent defends his determination by arguing that donative intent is an unnecessary element under Commissioner v. Wemyss, 324 U.S. 303, affirming 2 T.C. 876 and Merrill v. Fahs, 324 U.S. 308, it being enough that a transfer of property is made wherein the transferor does not receive full and adequate consideration in money or money's worth, as contemplated by section 1002, Internal Revenue Code; [1] and that here the donor not only did not receive full and adequate consideration for his transfer, but harbored a donative intent throughout. Respondent theorizes that the 1928 transfers *296 in trust failed to effect a completed gift, by reason of the provisions contained in the Trust Indenture calling for the reversion of the trust property to the grantor, who for our purposes may be considered to have been Reinicke, in the event of a final adjudication by a court of competent jurisdiction that any portion thereof was invalid under the laws of the state of Illinois. Accordingly, says respondent, this provision, which was section 23 of the Trust Indenture, amounted to and was the equivalent of a power to revoke, which power was released when, by virtue of the 1941 compromise agreement, such provision was deleted and the trust continued without it. We find ourselves in disagreement with respondent as respects Reinicke's donative intentions. *297 Regardless of what may have been his intentions at the time of the 1928 transfers in trust, all the evidence of record bearing upon the present question negates the presence of any intent, such as normally motivates the making of a gift, as the moving factor for Reinicke's entering into the compromise agreement in controversy. The settlement to which he agreed was made on the advice of his attorneys, both American and German, as being that which they and he regarded to be economically advantageous under the circumstances then existing. Perhaps Reinicke could successfully have resisted the appeal which was initiated by the bank and the guardian ad litem for the minor beneficiaries from the decision of the lower court. But all his advisers informed him that such success was extremely doubtful. Thus, Reinicke was faced with the decision of accepting the settlement offered, incurring additional legal expenses almost prohibitive in amount, or letting the action go by default. At this juncture, the question, which we need not answer, arises as to what would have been the position of the respondent had Reinicke chosen this last alternative. However, he chose to salvage as much as possible *298 by entering into the proposed compromise, and in so doing, we think, acted as any normal person would act under similar conditions. All things considered, such as Reinicke's geographical location, with all the inconvenience and prohibitive costs of continued litigation attendant thereon, the government to which he was subject, the critical international situation then existing, and the legal advice given him, we are of the opinion that Reinicke, in acting as he did, acted as one would under the circumstances, in settling differences with a stranger. See Catherine S. Beveridge, supra.
Nor are we able to agree with the respondent's further contention that, regardless of the absence of donative intent, the compromise in dispute resulted in a transfer for less than adequate and full consideration in money or money's worth so as to be subject to the gift tax under the doctrine of the authorities cited. Both Commissioner v. Wemyss, supra, and Merrill v. Fahs, supra, involved the question of whether the gift tax was applicable to premarital property settlements. They are distinguishable from the instant case for the reasons set forth in Harris v. Commissioner, supra, *299 and in Edmund C. Converse, 5 T.C. 1014, affd. 163 Fed. (2d) 131. Hooker v. Commissioner, 174 Fed. (2d) 863, affirming 10 T.C. 388, to which respondent points as being analogous to the case before us, we find distinguishable on the facts and inapposite here. The transfer there in controversy was made pursuant to a decree of the Supreme Court of Errors of Connecticut enforcing a preceding divorce settlement agreement. This agreement, entered into in 1935, provided, among other things, for the immediate transfer of certain sums in trust to provide for the support and maintenance of the taxpayer's children, thereby discharging him of the duty imposed by law to support such children. In addition, the taxpayer bound himself therein to add to the corpus of the two trusts or to transfer to trusts to be created, one-third of any amounts that he might receive from his mother upon her death. The divorce court involved, having power to determine the proper support for the children, adopted the agreement previously entered into. The income from the trusts in esse at the time of the divorce was conceded to be a fair consideration for discharge *300 of the taxpayer's duty to support. The amounts provided in the agreement, in addition to the amounts thus determined to represent proper support, were found to show a donative intent. The later transfers, pursuant to the court decree enforcing the agreement, were held to be without consideration in money or money's worth and therefore a gift. The transfer with which we are here concerned was made in consideration of certain monetary concessions and the dismissal of the appeal then pending. Moreover, it was effected by the final decree of the lower court incorporating the compromise settlement as agreed between the contesting litigants involved. A transfer under such circumstances in no realistic sense constitutes a gift subject to tax. Harris v. Commissioner, supra.But cf. Lois J. Newman, 19 T.C. 708 (January 22, 1953). See further Catherine S. Beveridge, supra, wherein this court in holding that a transfer of property under circumstances somewhat similar to those here present said, inter alia, that: "The transfer made is analogous for tax purposes to those of spouses who agree upon a property settlement prior to divorce in order to satisfy *301 existing claims of one against the other. Transfers pursuant to such agreements are not gifts and are not subject to gift tax, Commissioner v. Converse (C.C.A., 2d Cir.), 163 Fed. (2d) 131; Lasker v. Commissioner (C.C.A., 7th Cir.), 138 Fed. (2d) 989; Matthew Lahti, 6 T.C. 7; Herbert Jones, 1 T.C. 1207; dismissed, C.C.A., 7th Cir. The release from unliquidated claims, moreover, has a recognizable value in money or money's worth, * * * Commissioner v. Mesta, (C.C.A., 3d Cir.), 123 Fed. (2d) 986 * * *." That case in substance is so closely parallel to the one before us that such differences as may possibly exist are so minor as to warrant their disregard. Therefore, on the basis of the foregoing authorities, we answer the question posed in the negative and hold that respondent committed error in determining that the compromise settlement here involved effected a taxable gift. Decisions will be entered for the petitioners. Footnotes
1. SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION. Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.↩